## LUKE B. MILLER *vs.* WILLIAM H. MANSFIELD.

A railroad corporation had a regulation and usage by which cars containing certain kinds of goods should be unloaded by the consignee within twenty-four hours after notice to him of their arrival, and for delay in unloading after that time the corporation charged $2 a day for each car which contained such freight and was owned by another railroad company. *Held,* that, for a delay in unloading, the corporation in its capacity as a warehouseman, as against a consignee who had knowledge of these facts, had a lien upon the goods for storage.

TORT for the conversion of 100 barrels of flour. A jury trial was had in the District Court of Southern Berkshire, where, after a verdict for the plaintiff, the defendant's exceptions were allowed, from which it appeared that the plaintiff offered evidence tending to show that the defendant was the agent of the Housatonic Railroad Company; that the plaintiff was the owner of a bakery in the village of Great Barrington; that he purchased at Albany and had consigned to him at Great Barrington a car load of flour; that the flour arrived in a car at Great Barrington upon the Housatonic Railroad, having been transported a part of the distance from Albany by the Housatonic Railroad Company; that it remained in the car standing on a turnout in the custody and subject to the control of the defendant as agent of the company; that February 20, 1872, the plaintiff tendered to the defendant, as agent of the company, fifty dollars, a sum more than sufficient to cover the freight on the flour, and demanded it; that the defendant said there were certain charges for delay in unloading the car; that the plaintiff refused to pay them; and that the defendant refused to allow the plaintiff to take the flour.

The defendant offered evidence tending to show that the railroad company were common carriers; that they received at the state line from the Boston & Albany Railroad Company a car belonging to that company loaded with the plaintiff's flour; that they brought it over their road to Great Barrington; that the car arrived there and was placed on the turnout February 14, 1872; that there was an existing regulation and usage of the Housatonic Railroad Company, adopted and established for the mutual convenience of themselves and their freighters, that car loads of

Miller *v.* Mansfield.

freight like the plaintiff's should be loaded by the consignor and unloaded by the consignee in twenty-four hours after the arrival of the car at its place of destination and notice of the arrival given to the consignee ; that for delay in unloading beyond twenty-four hours from notice given a charge was made, according to the regulation and usage, of two dollars a day for each car belonging to another railroad company ; that freight like the plaintiff's was carried at a less rate than it otherwise would be carried, because the railroad company were not obliged to load and unload it ; that in pursuance of an arrangement existing between different railroad companies, to which the Housatonic Railroad Company and the Boston & Albany Railroad Company were parties, the Housatonic Railroad Company was bound to account for and pay over to the Boston & Albany Railroad Company the charges for delay in unloading cars, whether the charges were collected of the freighters or not ; that the plaintiff knew of this regulation and usage ; that he also knew, February 15, 1872, of the arrival of the flour in the car ; that on the morning of that day the defendant notified him of its arrival ; that afterwards on the same morning the truckman, usually employed by the plaintiff to cart his freight, went to him to know if he should move the flour; that the defendant refused to have him remove it ; that the flour could be unloaded by the truckman in half a day ; that the flour remained in the car till February 20, when the plaintiff made a tender of the freight and the defendant refused to deliver the flour without payment of the additional charge due for delay ; and that the defendant, acting as the agent of the railroad company, claimed a lien on the flour for the freight and the demurrage.

It appeared that the plaintiff subsequently paid the whole bill under protest and took his flour.

The defendant asked the court to instruct the jury as follows :

" To entitle the plaintiff to recover, they must be satisfied that the defendant refused to allow the plaintiff to take the flour after the plaintiff had tendered to the defendant all that the railroad company could lawfully charge in reference to the flour, including freight. and demurrage.

" That if they shall find that it was an established regulation and usage of the company to charge demurrage for delay in unloading such freight as the plaintiff's flour after twenty-four hours from the arrival of the car, and if they shall find such regulation and usage to be a reasonable one, then the plaintiff is bound by it, if he had knowledge of it either by special notice received from the defendant or otherwise, and the defendant, as agent of the company, would be authorized to detain the flour till the freight and the demurrage that were due according to the regulation and usage were paid.

" That if the jury shall find that it was a regulation of the railroad company in force at the time to charge for storage or demurrage at the rate of two dollars a day for each car when freight like the plaintiff's was not unloaded in twenty-four hours after its arrival, and if they shall find that the defendant gave the plaintiff notice of such regulation and of the arrival of the car containing the plaintiff's freight, then the plaintiff is bound thereby and the defendant is not liable in this action, unless he refused to deliver the flour or to allow the plaintiff to take it after the plaintiff had tendered the full amount that was due to the company for freight and storage according to the above regulation."

The court refused to give the instructions asked for, but instructed the jury that although they should find the facts to be as above alleged and recited in behalf of the defendant, still the Housatonic Railroad Company would have no lien on the plaintiff's flour to secure the payment of the charge for delay in unloading, and neither the said company nor the defendant as their agent were authorized to detain it after the tender made February 20, if they should find the tender to have been made as alleged.

*J. Dewey, Jr.,* for the defendant.

*H. C. Joyner,* for the plaintiff.

MORTON, J. For the purposes of this hearing, all the facts which the defendant offered to show are to be taken as established. We must assume, therefore, that there was an existing regulation and usage of the Housatonic Railroad Company that car loads of freight like that of the plaintiff's should be unloaded

by the consignee within twenty-four hours after notice to him of their arrival; that for delay in unloading, after twenty-four hours, the consignee should pay two dollars a day for each car belonging to other railroad companies, and that this regulation and usage was known to the plaintiff.

Being known to the plaintiff, it is to be presumed, in the absence of any evidence to the contrary, that the parties contracted in reference to it. It enters into and forms part of their contract, and the railroad company is entitled to recover the amount fixed by the usage, by virtue of the plaintiff's promise to pay it. This charge is, in its essential character, a charge for storage. After the arrival of the goods at their destination the liability of the company as common carriers ceased, but they became liable for the custody of the goods as warehousemen, and, if they were not removed within a reasonable time, were entitled to compensation, for which they had a lien as warehousemen. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. The parties, by their agreement, fixed the rate of compensation which the company should receive and the time when it should commence. It is not material that the goods remained in the cars instead of being put into a storehouse. The responsibility of the company for their custody was the same as if they had been stored, and they had the right to retain them until their charges were paid.

We are of opinion, therefore, that instructions should have been given substantially as requested by the defendant, and that the presiding judge erred in the instructions which he gave.

Both parties have assumed that the question involved in the case is the same as if the suit had been directly against the railroad company, and we have, therefore, so treated it.

*Exceptions sustained.*