BOWEN W. SCHUMACHER

*v.*

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Opinion filed February 17, 1904.*

1. RAILROADS—*railroad company entitled to car service fee.* In view of the duties required of a railroad company by law to provide prompt and proper service to shippers, a railroad company is entitled to demand a reasonable fee for car service or storage charges on car-load freight after allowing the consignee a reasonable time to unload the same, and is entitled to a lien upon the freight for such charges (*Chicago and Northwestern Railway Co.* v. *Jenkins,* 103 Ill. 588, distinguished.)

2. SAME—*lien for car service fee need not arise from specific contract.* Existence of a lien upon car-load freight for car service charges need not arise from a specific contract providing for the same, since it may arise by implication from the relation which the company sustains as warehouseman after its duty as a carrier ceases.

3. SAME—*the distance freight must be hauled is not an element of reasonable time.* In determining what is a reasonable time within which a consignee must unload car-load freight before he can be charged a car service fee, the distance which the freight must be hauled by the consignee is not an element for consideration.

*Schumacher* v. *C. & N. W. Ry. Co.* 108 Ill. App. 520, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

LOUIS ZIMMERMAN, for appellant:

A railroad company, in this State, can acquire a lien upon freight to secure the payment of car service or demurrage charges only when a provision of the statute gives it that right, or where there is an express agreement therefor between the railroad company and the one from whom it is sought to collect such charges. *Railway Co.* v. *Jenkins,* 103 Ill. 588; *Railway Co.* v. *Hunt,* 83 Tenn. 261; *Railway Co.* v. *Lamm,* 73 Ill. App. 592; *Railway Co.* v. *Holden,* id. 582; *Crommelin* v. *Railway Co.* 10 Bosw. 77.

PAM, CALHOUN & GLENNON, A. W. PULVER, and S. A. LYNDE, (CHARLES D. CLARK, of counsel,) for appellee:

The right of a railroad company to recover charges for the detention of cars by consignees who fail to unload within a reasonable period is thoroughly established. *Miller* v. *Mansfield,* 112 Mass. 260; *Barker* v. *Brown,* 138 id. 340; *Kentucky Wagon Co.* v. *Railroad Co.* 50 Am. & Eng. Ry. Cas. 90; *Miller* v. *Railroad Co.* 88 Ga. 563; *Railroad Co.* v. *Adams,* 90 Va. 393; *Kentucky Wagon Co.* v. *Railway Co.* 97 Ky. 32; *Pennsylvania Co.* v. *Steel Co.* 51 Atl. Rep. 313; 4 Elliott on Railroads, sec. 1567; *Goff* v. *Old Colony Railroad Co.* 22 L. R. A. 532.

A railroad company may, in its discretion, either store goods in its own warehouse or store the same in the car in which the same were transported, where such car affords the proper storage facilities. *Miller* v. *Mansfield,* 112 Mass. 260; *Miller* v. *Railway Co.* 88 Ga. 563; *Gregg* v. *Railroad Co.* 147 Ill. 550.

A railroad company may terminate its liability as a common carrier by unloading and storing the freight in its warehouse, thereby assuming the liability of a warehouseman only, and have a lien for all storage charges. *Railroad Co.* v. *Alexander,* 20 Ill. 404; *Porter* v. *Railroad Co.* 20 id. 407; *Transportation Co.* v. *Hallock,* 64 id. 284; *Railroad Co.* v. *Friend,* 64 id. 303; *Anchor Line* v. *Knowles,* 66 id. 150; *Rothschild* v. *Railroad Co.* 69 id. 164; *Cahn* v. *Railroad Co.* 71 id. 96; *Transportation Co.* v. *Moore,* 88 id. 136; *Scheu* v. *Benedict,* 116 N. Y. 510.

When the right to a lien exists, the same will not be defeated by the fact that the amount claimed may be too large, unless the owner or party desiring the possession of the goods makes a tender of the amount due. *Russell* v. *Koehler,* 66 Ill. 459; *Hoyt* v. *Sprague,* 61 Barb. 491; *Lowenberg* v. *Railway Co.* 19 S. W. Rep. 1051; Schouler on Bailments, sec. 125.

A lien may exist by reason of an implied contract for the same. *Miller* v. *Mansfield,* 112 Mass. 260; *Transporta-*

*tion Co.* v. *Moore,* 88 Ill. 136; *Railroad Co.* v. *Alexander,* 20 id. 23; *Darlington* v. *Railroad Co.* 72 S. W. Rep. 122; *Barker* v. *Brown,* 138 Mass. 340.

Public policy demands that individual convenience should be subordinate to the public good, which requires expedition, regularity, uniformity, safety and facility in moving freight. *Miller* v. *Railroad Co.* 88 Ga. 563; *Railroad Co.* v. *Adams,* 18 S. E. Rep. 763; *Kentucky Wagon Co.* v. *Railroad Co.* 50 Am. & Eng. Ry. Cas. 90; *Darlington* v. *Railroad Co.* 72 S. W. Rep. 122; 4 Elliott on Railroads, sec. 1567.

Car service or demurrage rules are recognized as being proper and lawful by the Federal courts. *Inter-State Commerce Com.* v. *Railway Co.* 74 Fed. Rep. 803; *Warehousemen's Ass.* v. *Railway Co.* 7 Inter-State Com. Rep. 556; *Millers' Ass.* v. *Railroad Co.* 8 id. 531.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellant brought an action of replevin in a justice's court in Lake county against appellee for three tons of coke. Judgment was for appellee in the justice court. On appeal to the circuit court of said county a trial was had before a jury, and the court directed a verdict for appellee and entered judgment thereon. Appeal was taken to the Appellate Court, where the judgment of the lower court was affirmed, and this appeal was prosecuted.

Appellant is a resident of Highland Park, and in June, 1902, purchased and caused to be shipped to himself at said place over appellee's road two cars of coke. The cars arrived in Highland Park on June 20, at seven o'clock in the morning, and at nine o'clock in the morning of the same day appellee's station agent at said point mailed appellant notice of the arrival of the cars. Appellant is a practicing lawyer residing at Highland Park and having his office in the city of Chicago, and on the same morning of the arrival of the cars, and shortly after the mailing of the first notice, appellee's agent saw appellant personally and informed him that said cars

had arrived. At that time appellee's agent did not know the freight charges, and neither by the first postal card nor by verbal statement was appellant informed on that day of the freight charges. On the morning of the 21st appellee's agent again notified appellant of the arrival of said cars, sending notice by postal card through the mail, which was received by appellant between 8:30 and 9 o'clock in the morning of that day. On the postal card so sent to appellant, after describing the freight, was the following: "Which is now at your risk; please pay charges and remove property within twenty-four hours, or same will be charged storage or delivered to warehouseman; all car-load freight shall be subject to a minimum charge for trackage and rental of one dollar per car for each twenty-four hours' detention, or fractional part thereof, after the expiration of forty-eight hours from its arrival at destination." And across the face of said postal card was stamped the following: "If this car is not unloaded within forty-eight hours from 7 A. M., June 21, 1902, a charge of one dollar per day, or fraction thereof, will be made for car service, for which this company reserves a lien upon the contents of car." Upon the 21st of June, and after the receipt of the postal card by appellant on that day, he went to appellee's station and there paid its agent the freight, taking a receipt therefor, and on each of the freight bills was stamped a notice identical with the one last above quoted. When appellant received the freight receipts he called the attention of appellee's agent to the notice with reference to the charge for car service contained thereon, and stated to him that he could not get the cars unloaded within forty-eight hours, or anywhere near that time; also recalled the fact that he had had trouble a year or so previous to this shipment with this same company at the same station, growing out of appellee's insistence upon the enforcement of the above rule. Appellant then engaged one James H. Duffy, whose business was the

hauling of coal and coke, to haul the same for him, but was informed by said Duffy that he could not begin the work until the following Monday, June 21 being on Saturday. One car was unloaded by Tuesday, June 24. On Thursday, June 26, the other car was only partially unloaded, and appellee, through its agent, notified Duffy, who was hauling the coke, that he could haul no more until the car service due from the delay in unloading had been paid. A controversy then arose between appellant and appellee, which resulted in the suing out of the writ of replevin on Monday, June 30, there remaining about three tons of coke in one car, which appellee had sealed and refused to allow to be removed until the car service was paid.

The evidence further shows that the cars, on their arrival on Friday, June 20, were placed on a stub-track, where they could be approached from one side and unloaded, and on the 21st of June were placed at the end of another stub-track, so that their removal was unnecessary until they were unloaded, and could be approached from both sides, for the purpose of unloading, without interference from switching so long as they remained at that point. The two cars in question came from and belonged to other railroad lines, one being from the Baltimore and Ohio Railroad Company and the other from the Illinois Central Railroad Company; that appellee had no warehouse for the unloading of bulk freight, such as car-loads of coal and coke, at Highland Park station, and that freight such as that in question is uniformly loaded and unloaded by the shipper and consignee.

The evidence further shows that in what was called "Chicago territory," and embracing a considerable scope of country surrounding the city of Chicago, and including Highland Park, was an association called the "Chicago Car Service Association," which was a joint association including all the railroads within that territory, all of which united in the selection of a single agent, known

as the "Car Service Association agent," the purpose and business of which association were to facilitate the loading and unloading of cars and for the securing of prompt service to shippers; that this agency or association had existed since 1888, and that appellee was a member of such association; that the United States, with reference to railroad traffic, was divided into forty-two districts, each having a similar association; that certain rules, designed to effectuate the purpose of such association, were formulated and published by it and observed by all its members and brought to the attention of shippers, as business between them arose and was conducted; that among the rules were rules 2, 4 and 5, as follows:

"2. Forty-eight hours' free time will be allowed for loading or unloading all cars, whether on public tracks or on private tracks, at the expiration of which time a charge of one dollar per car per day, or fraction thereof, shall be made and collected for the use of cars and tracks held for loading or unloading or subject to the orders of consignors or consignees or their agents.

"4. In calculating time, Sundays and the following holidays are excepted: New Year's Day, Washington's Birthday, Decoration Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas.

"5. On cars arriving after 6:00 P. M. of any day, car service will be charged after the expiration of forty-eight hours from 6:00 P. M. on the day following."

The evidence showed that in the city of Chicago alone there were shipped in, approximately, 75,000 cars of coal and coke every month; that the average earning capacity of freight cars upon twenty-nine railroads in the association, for the year 1901, was $2.42, and on appellee's road $2.15 per day.

Under the above state of facts appellee contends that it was entitled to charge a car service or car track service of one dollar per day, after the expiration of forty-eight hours, upon these cars, and that it was entitled to a

lien upon the coke, the same being the freight contained in them, for the payment of such charges. Both of these propositions are denied by appellant, and arise upon the peremptory instruction for a verdict, given by the trial court.

Under the constitution and laws of this State railroads are public highways and railroad corporations are *quasi* public corporations. They are chartered by the State and may invoke the right of eminent domain for the acquirement of lands necessary for the conduct of their business. Regarding them as public agencies, discharging duties in which the public is interested, the State regulates and controls their rates and tolls, both for the carrying of freight and passengers, and in many other respects regulates and controls their operation. Upon the payment or tender of the legal tolls, freight or fare, such companies are required to furnish cars and transport freight and passengers within a reasonable time, and upon their failure to do so they are subject to treble damages to the party aggrieved, and in addition thereto a penalty or forfeiture to the school fund of the State. (Hurd's Stat. 1899, chap. 114, pars. 84, 85.) They must receive and transport cars loaded and unloaded over their lines, and in doing so assume the liability of a common carrier as to both such cars and freight. (*Peoria and Pekin Union Railway Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 109 Ill. 135.) They may not discriminate against shippers in rates or facilities for shipping, and are required to make special provision for the handling and shipping of grain. All of these regulations by the State are justified and sustained upon the ground that the State is interested in the prompt and proper carriage of its products and the commerce of its people, and it would seem that reasonable rules and regulations adopted by such corporations, conducive to the proper discharge of the public duty, should, where they are not in violation of some positive law, be sustained.

Railroads, as to freights committed to their charge, during the period of transport and until they are delivered, bear two well recognized relations. While in transit, and for a reasonable time after reaching the point of destination, they owe the duties and bear the relation of common carriers; and when the car containing the freight is delivered to the consignee upon his own track or at the place selected by him for unloading, if he have one, or to the consignee upon the company's usual and customary track for the discharge of freight, with reasonable and proper opportunity to the consignee to take the same, or when placed in the warehouse of such company or the warehouse of another selected by them, in any and all such cases such companies then bear to such freight the relation of warehousemen. (*Peoria and Pekin Union Railway Co.* v. *United States Rolling Stock Co.* 136 Ill. 643; *Gregg* v. *Illinois Central Railroad Co.* 147 id. 550.) If the cars in which such freight is shipped are the property of another railroad than that of the company transporting the same to the point of destination, such latter company bears the same relation to such cars as to the freight therein. (*Peoria and Pekin Union Railway Co.* v. *United States Rolling Stock Co. supra.*) Such are the duties of such companies appertaining to bulk freight in carload lots, which, it may be said, by the uniform rule and custom of this country are to be loaded and unloaded by the shipper and consignee. Small or package freight, of such character and bulk that that belonging to many distinct owners may be shipped in a single car, is commonly loaded and unloaded by the transporting company or companies. When such freight reaches the point of destination and is placed in the freight depot or warehouse of such company it is held by such company as a warehouseman, and when a railroad company carries freight to its point of destination and stores the same in its warehouse, and the relation of warehouseman is established by the failure to remove the property within a rea-

sonable time, the liability of a warehouseman attaches, and not the liability of a common carrier. *Illinois Central Railroad Co.* v. *Alexander*, 20 Ill. 24; *Porter* v. *Chicago and Rock Island Railroad Co.* id. 408; *Merchants' Dispatch Transportation Co.* v. *Hallock*, 64 id. 284; *Illinois Central Railroad Co.* v. *Friend*, id. 303; *Rothschild* v. *Michigan Central Railroad Co.* 69 id. 164; *Merchants' Dispatch and Transportation Co.* v. *Moore*, 88 id. 136; *Anchor Line* v. *Knowles*, 66 id. 150.

It is the duty of the consignee to take notice of the time of the arrival of freight shipped to him and to be present and receive the same upon arrival, and he is not entitled to notice from the company that the same has arrived, but the company is authorized to store such freight and to be relieved of its duty as a common carrier, (*Merchants' Dispatch Transportation Co.* v. *Hallock*, *supra*,) and when such freight is in the warehouse the railroad company may charge storage upon the same, and it has a lien upon the freight so stored for its storage charges, and this rule obtains although the company may have given the consignee notice to remove the property within twenty-four hours.    *Richards* v. *Michigan Southern and Northern Indiana Railroad Co.* 20 Ill. 405; *Porter* v. *Chicago and Rock Island Railroad Co.* *supra; Illinois Central Railroad Co.* v. *Alexander*, *supra*.

When a railroad company delivering freight at its point of destination has no warehouse at that point suitable for the storage of bulk freight in car-load lots, and the property is of such character that the cars in which it is transported furnish a proper and safe place for the same, so that it is not liable to damage or deterioration arising from heat or cold or the elements, there would seem to be no reason for requiring the transporting company to seek a warehouse of another and add the cost of removal to the cost of storage when said freight may properly be held in storage in the cars in which the same was carried; and after notice to the consignee, and a reasonable time to remove the same, reasonable storage

charges may be collected therefor and. the freight held for the payment, thereof. *Miller* v. *Mansfield,* 112 Mass. 260; *Miller* v. *Georgia Railroad Co.* 88 Ga. 563; *Gregg* v. *Illinois Central Railroad Co.* 147 Ill. 550.

In *Gregg* v. *Illinois Central Railroad Co.* the action was for damage to grain by water, which had been stored by the railroad company in a warehouse in Augusta, Georgia. The grain was not received promptly upon arrival at its destination and was stored, and while in storage was injured by a flood. In speaking of the duty of the company with reference to such freight, this court said (p. 560): "The railroad company was not required to keep the corn in its cars on track indefinitely, and although the consignee was in default in not receiving the freight after reasonable time and opportunity had been afforded in which to take it, the carrier could not abandon it, but was required to exercise ordinary and reasonable care for its preservation as warehouseman. In the exercise of such care it might leave it in the cars, store it in its own warehouse, assuming the liability of bailee or warehouseman therefor, or it might, with the exercise of like degree of care in selecting a responsible and safe depository, store the grain in an elevator or warehouse at the expense and risk of the owner."

In *Miller* v. *Georgia Railroad Co. supra,* it is said (p. 563): "It is well settled that the carrier, in addition to its compensation for the carriage of goods, has the right to charge for their storage and keeping, as a warehouseman, for whatever time they remain in its custody after reasonable opportunity has been afforded the owner to remove them; and we think where the carrier's duty ends with the transportation of the car and its delivery to the customer, and no further service is embraced in the contract, the carrier, after a reasonable time has been allowed for unloading, is as much entitled to charge for the further use of its car as it would be for the use of its warehouse. We know of no good reason why it should

be restricted to the latter method of storage. There is no law which inhibits the use of cars for this purpose, or which requires unloading and removal of the goods to some other structure before any charge for storage can attach. This method of storage may, in many cases, be as effectual as any other. Indeed, it may serve the customer's interest and convenience much better to have the car placed at his own place of business, where he may unload it himself or where it may be unloaded by purchasers as the goods are sold, thus saving drayage and other expenses, than to have it unloaded by the carrier and the goods stored elsewhere at the consignee's expense. And if a customer whose duty it is to unload, and who, failing to do so within a reasonable time, accepts the benefit of storage in a car by requesting or permitting the carrier to continue holding it unloaded in service and subject to his will and convenience as to the time of unloading, he cannot be heard to complain of the method of storage, and to deny the right to any compensation at all for this service on the ground that some other method was not resorted to. He may insist that the rate fixed shall not be unreasonable or excessive, but the law cannot be invoked to declare that no compensation whatever shall be charged for such extra service."

In *Miller* v. *Mansfield, supra,* it was said: "It is not material that the goods remained in the cars instead of being put into a store-house."

In the case at bar appellant did not discharge his duty to the appellee by being present and ready to receive his freight upon its arrival. Within two or three hours of its arrival he was notified thereof, and after it had lain there twenty-four hours and said car was placed where appellant had full and fair opportunity to remove the freight without interference in any form and to approach the car from both sides for that purpose, and when appellee's duty as a common carrier had ceased, appellant was notified that he must remove the same

207—14

within forty-eight hours, or a car service or storage charge, which; under the circumstances, must be held to be the same thing, of one dollar per car would be insisted upon. Appellant also knew, by the previous dealings between himself and appellee, that such rule obtained, and unless he could show that the limit of time was unreasonable or the charge excessive, it would seem appellee's contention to charge as for storage should be upheld.

It is also urged by appellee that the right to demand such charge and enforce the same by lien arises from the unreasonable detention of the cars in question by appellant, and that such charge is in parity with and in the nature of demurrage as it exists under the maritime law, and not based upon the theory of storage charges; that it was the duty of appellant to take notice of the arrival of his freight and to be present and ready to receive the same when it did arrive, and that having failed to do this, he having notice of the rule of the company to charge for the detention beyond the period of forty-eight hours, a car and track service in the nature of demurrage may properly be demanded. The evidence in this case shows that by the enforcement of the rule here insisted upon, the transportation facilities in the car service territory here involved was increased practically one hundred per cent, and that only about seven per cent of the shippers or consignees, through its operation, hold their cars overtime. If such common carriers must comply with our statute and must furnish transportation for people and freight when demanded, and such companies have made proper provision in equipping their roads with an ample supply of rolling stock, and yet, because of the dilatoriness or perversity of shippers and consignees, cars may be held indefinitely at loading and discharging points, contrary to the desires and interests of such companies, then it must be plain that the statute must either fall as a dead letter or its enforcement must work great injustice to such companies.

This precise question seems not to have been before this court previous to the present case.    In 1891 the Attorney General of this State, in an opinion to the Railroad and Warehouse Commissioners in complaint No. 64, *Union Brewing Co. of Peoria* v. *Chicago, Burlington and Quincy Railroad Co.*, and complaint No. 71, *Lyon & Scott* v. *Peoria and Pekin Union Railroad Co.* said: "Section 5 of the act in relation to receiving, carrying and delivering grain in this State provides that a consignee of grain transported in bulk shall have twenty-four hours, free of expense, after actual notice of arrival, in which to remove the same from the cars of such railroad corporation.    There would seem to be an implied right, under the statute, to charge for a longer detention than the twenty-four hours which the statute names.    Indeed, no reason is perceived, in law or justice, why an unreasonable and unnecessary detention of cars by consignees should not be paid for; and the car service association seems, from the proof before us, to be only an agency established to keep account of claims so arising and enforce them.    The charges so made were thought to be reasonable, under all circumstances.  *  *  *  Demurrage is an important subject, which has arisen in a practical way only within late years and long after our statute for the regulation of railroads was passed.    It does not, however, follow that because there is no statutory regulation of the question there is no law."

Mr. Elliott, in his work on Railroads, (vol. 4, sec. 1567,) says: "But while it is probably true that this right is derived, by analogy, from the maritime law as administered in America, the more recent authorities have almost unanimously upheld the right of railroad companies to make demurrage charges in proper cases.    As said by one of the courts, 'we see no satisfactory reason why carriers by railroads should not be entitled to compensation for the unreasonable delay or detention of their vehicles as well as carriers by sea.'    After a carrier has

completed its services as such, it has a right to charge extra compensation for storing the goods in a warehouse and keeping them, after the consignee has had a reasonable time in which to remove them. Why, then, when its duties as a carrier have been performed and a reasonable time has elapsed, is it not as much entitled to additional compensation for the use of its cars and tracks as for the use of its warehouse? Certainly a customer whose duty it is to unload, or who unreasonably delays the unloading, of a car for his own benefit, ought not to complain if he is made to pay a reasonable sum for the unreasonable delay caused by his own act. But this is not all. The public interests also require that cars should not be unreasonably detained in this way." And to the like effect are *Miller* v. *Georgia Railroad Co. supra; Norfolk and Western Railroad Co.* v. *Adams,* 90 Va. 393; 44 Am. St. Rep. 916; *Darlington* v. *Missouri Pacific Railroad Co.* 72 S. W. Rep. 122; *Inter-State Commerce Commission* v. *D., G. H. & M. Ry. Co.* 74 Fed. Rep. 803; *American Warehouse Ass.* v. *Illinois Central Railroad Co.* 7 Inter-State Com. Rep. 556.

Nor do we think it necessary to the existence of such lien that it arise from a specific contract providing for the same, but that such right and contract may arise by implication, as in the case of warehouse charges to a railroad company that has stored goods transported by it when not received by the consignee promptly at the place of delivery. *Miller* v. *Mansfield, supra; Merchants' Dispatch and Transportation Co.* v. *Moore,* 88 Ill. 136; *Illinois Central Railroad Co.* v. *Alexander,* 20 id. 24; *Darlington* v. *Missouri Pacific Railroad Co. supra; Barker* v. *Brown,* 138 Mass. 340.

It is claimed, however, by appellant that the case of *Chicago and Northwestern Railway Co.* v. *Jenkins,* 103 Ill. 588, lays down the rule contrary to the views we have above expressed, and that that case should be controlling in the present case. We think not. That case seems to have related to or grown out of the shipment of goods in less

quantity than a car-load lot. The character of the goods was of a perishable nature, and such, if removed from the cars, must be stored, and in distinguishing that case from cases under the maritime law, and denying that the rule applicable in contracts of shipment under the latter law applied to railroad companies, it was said (p. 600): "But the mode of doing business by the two kinds of carriers is essentially different. Railroad companies have warehouses in which to store freights; owners of vessels have none. Railroads discharge cargoes carried by them; carriers by ship do not, but it is done by the consignee." Thus, it will be seen that the court could not have had in mind the case of the shipment of goods of the character here involved by car-load lots, and where the undisputed evidence shows that the rule is that such freight shall be loaded by the shipper and unloaded by the consignee, and that railroads do not have warehouses in which to store that class of goods.

Appellant contends that the trial court erred in not permitting him to show, as tending to show whether the coke was unloaded within a reasonable time, the distance from his house to the station where said car was placed for unloading. In this, we think, there was no error. If such is the rule, and as there were 57,000 pounds of coke in this shipment, and it should appear by the evidence that the distance from the consignee's home to the station should be such that but one load of coke could be hauled a day, and that a ton at a load was all that could be hauled, taking the condition of the roads into consideration, then according to appellant's contention, he would be entitled to hold the cars in question at that place, without charge, for more than a month. Such a rule would practically take out of business, under the supposed case, the rolling stock of a company for one-twelfth of the year, to the prejudice of other shippers and to the detriment of the public interests. The correct rule must be that the consignee shall have a

reasonable time, after having knowledge of the arrival of his freight, to get the necessary help and means to remove the same; and it cannot be presumed that he is to do this by the employment of the fewest number of persons or teams that can be employed at such work, and at the same time have it said that any effort whatever is being made to remove the freight. No circumstance is shown here why a number of teams and abundance of help could not have been obtained, by proper effort, to have unloaded this coke within the forty-eight hours fixed by the rule, allowing for the Sunday; and if it could not, it cannot be maintained, as we think, that appellee should stand the loss of appellant's failure or inability to discharge his duty and perform his contract. Circumstances might arise, and doubtless will, in such cases, when, in determining what shall be a reasonable time, many things are necessary to be taken into consideration, but the distance that the commodity is to be hauled when removed from the company's cars, it would seem, should not be one of them.

It is urged, further, that a lien ought not to be accorded common carriers in such cases, but they should be left to their action upon the case or in assumpsit. There is no law preventing the sale, by the consignee, of the cargo, at the point of destination, to one or many persons who may be wholly irresponsible and as against whom suits would be unavailing. The object of such a rule cannot be so much for the recovery of a revenue as the enforcement of a rule that is to the benefit of all the shippers, and thereby a public benefit. The charge must be said to be little more than nominal, and yet the evidence discloses that its imposition in such cases has had a highly beneficial effect. No question is made as to the reasonableness of the charge, and if there were, it could have no effect in the case at bar, for the reason that appellent absolutely denies the right of appellee to any charge or compensation and made no tender of any por-

tion of it.   *Russell* v. *Koehler,* 66 Ill. 459;  *Hoyt* v. *Sprague,* 61 Barb. 491;  Schouler on Bailments, sec. 125.

The views above expressed as to the rule obtaining to such charges, whether regarded as storage charges or demurrage or car service, seems to be in keeping with the weight of the modern decisions upon the question, and, we believe, will tend to the public welfare.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*