# Southern Railway Co. *v.* Lockwood Mfg. Co.

## *Action of Trover.*

1. *Railroad company's demurrage charges for detention of car; lien exists for such charges.*—A railroad company may legally charge car service or demurrage for the detention of its cars by a consignee or consignor beyond a reasonable time in which to unload them or load them, as fixed by rules adopted by the Alabama Car Service Association; and for.such demurrage charges the carrier has a lien on the property shipped.

2. *Same; lien not lost by placing car on particular track to be unloaded.* The placing of a loaded car on a particular track by a railroad company for the purpose of allowing the consignee to unload it, is not such an absolute and unconditional delivery unto the assignee of the articles shipped as would cut off or release company's future right of lien on said articles for legitimate charges for car service or demurrage that might subsequently accrue, by reason of the consignee's failure to unload the car within the time fixed 'by the rules, of the company or of the car service association.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This was an action of trover brought by J. L. Lockwood, H. W. Lockwood and A. H. Lockwood, doing business as partners under the firm name of Lockwood Manufacturing Company, against the Southern Railway Company, to recover damages for the alleged conversion by the defendant of 7000 feet of poplar lumber. The damages claimed being fixed at $260.

The defendant pleaded the general issue and the following special plea: "For further answer to the complaint, defendant says that the car of lumber, a part of which forms the subject matter of this suit, arrived at Birmingham over defendant's line on March 22, 1902,

to be delivered to the plaintiffs in this cause; that on the same date plaintiffs were notified of the arrival of the car; that the car was not ordered placed until March 29th at 12 M., that car service charges in the sum of one dollar per day or fraction thereof, began to accrue on said car at 7 A. M., March 26th; that at the time the car was ordered placed, car service charges were due in said car for two days and five hours, the 28th day of March having been a holiday, that said charges amounting to $3.00 were paid when car was ordered placed; that car was placed at 12 M. March 31st; that the nineteen hours free time which plaintiff had to unload the car expired at 7 ... M., April 1st; that at 4 P. M. on April 2nd, demand was made on plaintiff for the additional car service, amounting to one dollar; that plaintiff refused to pay same, whereupon defendant declined to deliver the lumber which was remaining on the car at that time, and which forms the subject matter of this suit. The defendant says that at the time the alleged cause of action arose, it was a member of the Alabama Car Service Association, and as such had bound itself to conform to the rules and regulations of said association; that the rules of said association required it to make car service charges in the amount of $1.00 per day or part thereof on each car after 48 hours had elapsed, after notice to consignee of the arrival of such car; that this rule was enforced by the defendant in all cases; that it was embodied in the contract of shipment with plaintiffs either expressly or impliedly, and that plaintiffs refused to pay the proper charges assessed in accordance with this rule."

The case was tried upon issue joined upon these pleas. The undisputed testimony showed the following facts: A car of lumber consigned to plaintiffs, arrived at Birmingham, over defendant's line of railroad, from Berry, Alabama, on Saturday March 22nd, 1902. The plaintiffs were notified of the arrival of the car on the afternoon of that day. At twelve o'clock Saturday, March 29th, one of the plaintiffs called at the office of the defendant's agent in Birmingham and paid the freight on this car,

and in addition thereto $3.00 car service or demurrage which had accrued on the car up to that time, at the same time ordering the car placed for unloading. The car was placed at twelve o'clock March 31st, on one of defendant's team tracks, the usual place for unloading bulk shipments of this kind. At four o'clock on the afternoon of April 2nd, the lumber was only partially unloaded, and the car still detained. $1.00 additional car service having accrued after the car had been placed for unloading, the defendant, through its car service clerk, presented the plaintiffs bill for this amount, which they refused to pay. Thereupon the car was sealed, with a part of the lumber still on board and placed beyond the reach of the plaintiffs, and the lumber held for payment of demurrage charges. This is the lumber sued for.

The operation of Rules 1, 2 and 9 of the Alabama Car Service Association, which were introduced in evidence, and which are the rules enforced by the defendant in connection with car service or demurrage charges, is clearly explained by the following uncontroverted testimony of J. B. Franklin, defendant's car service clerk: "In March and April of last year I was car service clerk for the Southern Railway at Birmingham, and my duties were to look after the cars that arrived here over the Southern road for the city delivery, and see that the consignees were promptly notified and that the cars were placed after the freight and all charges were paid, and after the cars were not unloaded within 48 hours after the parties were notified, to collect all car service due on them. The car service charged was $1.00 per day or fraction thereof on each car, after expiration of the free time of 48 hours. I remember a car of lumber having arrived on the 22nd day of March, 1902, consigned to the Lockwood Mfg. Company. That it was on Saturday, and notice was given to Lockwood Mfg. Company that this car had arrived, some time between 1 and 5 o'clock that afternoon. The car was ordered placed at 12 o'clock March 29th. Up to that time car service charges had

accrued to the amount of $3.00.  I figure that out this way:  I gave notice of the arrival of the car on the afternoon of the 22nd, but under the rules, the time did commence on the car until 7 o'clock the next morning, the 23d.  This being Sunday, would throw it the next morning, and the time commenced to count 7 o'clock Monday morning, the 24th.  The 48 hours free time allowed expired at 7 o'clock on Wednesday morning, the 26th, and then the car service began to accrue.  Thursday morning at 7 o'clock one day had elapsed, and Saturday morning at 7 o'clock two days had elapsed; Friday the 28th was a holiday and holidays and Sundays are not considered in estimating the time for car service charges.  Up to 12 o'clock Saturday the 29th when the car was ordered placed, 2 days and 5 hours had elapsed, and $3.00 car service was collected.  The car was placed at 12 o'clock March 31st.  Under the rules of the railroad commission the company is entitled to 48 hours in which to place the car, after the freight and all charges have been paid. If the company takes more than that time, it must pay the shipper $1.00 a day or any part thereof on each car. In counting the time against the company, Sundays and holidays are not included; just like the car service, the rule works both ways.  March the 30th having been Sunday, the company placed this car in 24 hours, according to the rules for estimating time, after the car was ordered placed.  After the car was placed, the Lockwood Mfg. Company had 19 hours which they had already paid the demurrage for, in which to unload.  These 19 hours had expired at 7 o'clock on the morning of April 1st, and at that time car service began to accrue again.  I did not present a bill to any member of the firm of Lockwood Company for any additional car service until late in the afternoon on April 2nd, about 4 o'clock.  I did not present the bill on the 1st because I wanted to favor Mr. Lockwood.  The bill which I presented on the 2nd was for $1.00, and I presented it to Mr. Lockwood, the old gentleman who was the first witness for the plaintiff. He was at the time at his place of business on 26th street.

It was also shown that plaintiff had notice of the regulation of defendant in reference to car service or demurrage charges.

Among the other charges requested by the defendant, and the refusal to give each of which the defendant separately excepted, was the general affirmative charge in its behalf. There were verdict and judgment for the plaintiffs, assessing their damages at $180.00. From this judgment, the defendant appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

JAMES WEATHERLY and J. T. STAKELY, for appellant. This court has held that a rule of a railroad company that a party to whom freight is consigned must receive the same within 48 hours after notice, is a reasonable one, and a charge for storage after expiration of that time is legal.—*Gulf City Construction Company v. Louisville & Nashville R. R. Company,* 121 Ala. 621. As a corollary to this a railroad company may legally charge storage or demurrage for its cars used and occupied by consignees beyond a reasonable time after the contract of transportation has been fulfilled.—*Miller et al v. Georgia Railroad & Banking Co.,* 88 Ga. 563; 50 Am. & Eng. R. R. Cases, 79 and notes; *Kentucky Wagon Mfg. Co. v. Louisville & Nashville R. R. Co.,* decided by Louisville (Ky.) Law and Equity Court Dec. 20, 1901; 20 Am. & Eng. R. R. Cases (N. S.) 450; *Miller v. Mansfield,* 112 Mass. 260; *Norfolk & Western R. R. Co. v. Adams,* and authorities cited, 90 Va. 393; *Kentucky Wagon Mfg. Co. v. Ohio & Mississippi R. R. et al,* 2 Am. &. Eng. R. R. Cases (N. S.) 722; *Swan v. Louisville & Nashville R. R. Co., et al,* 20 Am & Eng. R. R. Cases 446; *Alabama Railroad Commission in repetition of Youngblood & Ehrman; New Orleans & North Eastern R. R. Co. v. A. H. George & Co.* decided by the Supreme Court of Mississippi Nov. 16, 1903. Reported in advance sheets of Sou. Reporter for Dec. 5th, 1903, p. 193.

As to the second proposition it is a well settled principle of law that a warehouseman has a lien for his charges.—42 Am. Dec. 254 and notes, and cases cited on page 257 and following; 28 Am. & Eng. Ency. of Law (O. S.) page 663. It is equally well settled that where a common carrier, after the arrival of freight, gives notice to the consignee and places the goods in its warehouse, its liability thereafter is that of a warehouseman.—*Collins v. Alabama Great Southern R. R. Co.*, 104 Alabama 390. And the carrier is entitled to additional compensation for its services as warehouseman.—*Gulf. City Construction Company v. Louisville & Nashville R. R. Company*, cited above. If the carrier can make an additional charge when it stores the goods in its warehouse and has a lien for such charge, for the same reasons it can make an additional charge and has a lien therefor when the goods remain in its cars after its liability as a common carrier has ceased.—*Miller v. Georgia R. R. & Banking Company* (cited above). *Miller v. Mansfield* (cited above). And the recent case of *New Orleans & North Eastern R. R. Co.*, decided by the Supreme Court of Mississippi (cited above), these last two cases assert directly the proposition that a railroad company has a lien for car service or demurrage charges.

We concede that if the defendant had abandoned its lien it could not afterwards reassert it. But from the very nature of the case the mere placing of the car and allowing plaintiffs to unload part of the lumber could not amount to such an absolute and unqualified¹ delivery as to constitute a waiver. At the time of the payment of the freight and accrued demurrage, the defendant had no way of knowing that any additional charge would become due. It had a right to assume that the plaintiff would unload the car within the nineteen hours they had paid demurrage for. But even if it had known that the car would not be unloaded within that time, and that an additional charge would become due, it would have had no right to make demand therefor, until such charge

should become due in fact. It could only make demand for additional charges from time to time as they accrued until the car was finally unloaded. If the position contested for by appellee's should be sustained, a consignee might detain a car indefinitely for the purpose of unloading and the carrier would have no redress therefor except by resort to an action at law for his charges.—*Scott v. Delaware, Lackawanna & Western R. R. Co.,* (unreported) ; *Lane et al. v. Old Colony and Fall River R. R.,* 14 Gray (Mass.) 143.

WHITE & HOWZE, *contra.*—The principal question and indeed the only question in this case which we deem it necessary to consider is, whether the appellant had released its lien upon the lumber by delivering it to the appellees. If it had done so, its lien was of course gone and it was guilty of a conversion in taking the lumber from the appellees and in carrying it away.—*Lake Shore etc v. Ellsey,* 85 Penn. State Reps. 283 ;Story on Bailment, sec. 588; *Beineman v. St. Paul,* 1 N. W. Reporter, 619 ;*Sears v. Willis,* 4 Allen (Mass.) 212; 4885 Bags of Linseed, 1 Black (U. S.) 108. In case of a ponderous article, all that is necessary to perfect a delivery is the intention of the one to transfer and the other to accept the property in question and to put it in the power of the latter.—*Goree v. Walthall,* 44 Ala. 161, 165-6. In the case at bar, it was proven that it was the intention of the defendant (appellant) to transfer and of the appellees to accept the lumber, for after all charges then due against it had been paid the lumber was actually put in the power of the appellees for the express purpose of being disposed of by them.—*Ivey v. Owens,* 28 Ala. 641. After the property had been delivered, the appellant had no right to forcibly (for it was nothing less than force) take it away from the appellees and reassert its lien.—*Lake Shore etc. v. Ellsey,* 85 Penn. State Reps. 283 ; *Pope v. Randolph,* 13 Ala. 215 ; *Hale v. Barnett,* 26 Ill. 195.

DOWDELL, J.—The evidence in this case upon the principal issue involved, is practically without dispute. The reasonableness of the Railway Company's rules which were adopted by the Alabama Car Service Association relative to demurrage charges on its cars, and the time limit in the placing of its cars for unloading, and the unloading of the same, by the consignee, etc., as shown by the evidence, seems not to have been denied or questioned.

We concur in the statement made by counsel for appellees in their brief, that the only question in this case necessary to be considered, is whether the appellant had released its lien upon the lumber by placing the car on the "team track" for the purpose of being unloaded. The proposition seems quite clear, that if the appellant, Railway Company, had no lien upon the lumber, then in removing the car with the lumber on it and holding the lumber for the purpose of enforcing a pretended lien, it, the Railway Company, would be guilty of a conversion. This, we understand, is not controverted by counsel for appellant.

The contention of the appellee is that by placing the car of lumber on the "team track" to be unloaded by the consignee was a delivery of the lumber to the consignee, and such a delivery of possession of the property as amounted to a release of whatever lien the Railway Company had on the lumber. It is not denied that the Railway Company, as a common carrier had a lien on the lumber for transportation charges, and for the demurrage charges, which had accrued after notice to the consignee of the arrival of the car of lumber, under the company's rules. Indeed, this question is not involved, as the undisputed evidence shows that the charges had been paid by the consignee, when the car was placed on the "team track" to be there unloaded by the consignee. And it was at this time, that the appellee, who was the consignee, claims that the lumber was delivered by, and passed from the possession of, the Railway Company into its possession, discharged of all antecedent liens and not

subject to any subsequent lien. It is not denied that the car remained upon the "team track", where it had been placed by the Railway Company for the appellee's convenience in unloading the same, for the "time limit" allowed by the rules of the Railway Company, and that the demurrage for which a lien is claimed accrued after the expiration of the "time limit" for unloading. As stated above, the reasonableness of the rule as to "time limit" and "demurrage" charges, is not questioned, nor is it denied that the appellee had notice of such rule. The question then is, whether a lien on the lumber remaining on the car arose in favor of the Railway Company for demurrage accruing subsequent to the delivery in the manner stated, and after the expiration of the "time limit" for unloading the car.

Leading up to the proposition, it may be stated, that this court has held that a rule of a railroad company that a party to whom freight is consigned must receive the same within forty-eight hours after notice, is a reasonable one, and a charge for storage after that time is legal.—*Gulf City Construction Co. v. L & N. R. R. Co.*, 121 Ala. 621.

And it may be said, as a corollary to this, a railroad company may legally charge storage or demurrage for its cars used and occupied by consignees beyond a reasonable time after the contract of transportation has been fulfilled.—*Miller, et al. v. Georgia R. R. & Banking Co.*, 88 Ga. 563; 15 S. E. 316; 30 Am. St. Rep. 170. See also 20 Am. & Eng. R. R. Cases, (N. S.) 450, where will be found a collation of authorities on the question. It is a well settled proposition of law that a warehouseman has a lien for his charges.—*Steinman v. Wilkins*, (Pa.) 42 Am. Dec. 254, and note on page 257; 28 Am. & Eng. Ency. Law, (1st Ed.) p. 663. It is equally well settled that where a common carrier, after the arrival of freight, gives notice to the consignee and places the goods in its warehouse, its liability thereafter is that of a warehouseman.—*Collins v. Ala. Great Southern R. R. Co.*, 104

Ala. 390. And the carrier is entitled to additional compensation for its services as warehouseman.—*Gulf City Construction Company v. L. & N. R. R. Co. supra.*

It would seem, if the carrier can make an additional charge when it stores the goods in its warehouse and have a lien for such charge, upon like principle and for the same reasons, it may make an additional charge and have a lien therefor when the goods remain in its cars after its liability as a common carrier has ceased.—*Miller v. Georgia R. R. & Banking Co. supra; Miller v. Mansfield,* 112 Mass. 260 ;*New Orleans & North Eastern R. R. Co. v. George,* (Miss.) 35 South. 193.

In *Miller v. Georgia R. R. & Banking Co.,* it was said, "We do not think it material, as affecting the right to make a charge of this character, that the goods remain in the cars, instead of being put into a warehouse." And in the case of *New Orleans & North Eastern R. R. Co. v. George, supra,* it is said, "There is no force in the argument which concedes the right of the carrier to make demurrage charges, but contends that the goods must be delivered, and then the carrier sue for the amount. This course would give the dishonest and insolvent unfair advantage, and would breed a multiplicity of suits."

The foregoing authorities fully sustain the doctrine of the right of the carrier to a lien upon the goods transported for demurrage charges. Coming then to the main question in the case before us, was the placing of the car of lumber on the "team track" of the Railway Company for the purpose of being unloaded by the consignee, such an absolute and unqualified delivery of the lumber into the possession of the consignee as would cut off any future right of lien for legitimate charges for car service, or demurrage, subsequently accruing? We think not. The delivery of the possession of the lumber, in the manner in which it was made, and under all the conditions and circumstances, was a qualified delivery. The delivery was conditioned upon the lumber being unloaded from the car within a fixed time, and upon a failure of the consignee to comply with this condition additional rights

and liabilities between the parties arose. The right of the consignee's possession of the lumber was accompanied with the duty on his part to remove the same from the car. It would hardly be contended that the placing of the car for the purpose of unloading terminated all liability of the Railway Company both as carrier and warehouseman while the lumber yet remained on its car. Upon the same principle that a railroad company, when its relation becomes that of a warehouseman, has a lien upon goods for storage charges, it has a lien upon goods for demurrage, or car service. A contrary doctrine would defeat the purpose of the rule of the Car Service Association adopted by the Railroads, and which was made in the interest of commerce generally, and for the benefit of shippers as well as carriers.

The indefinite detention of cars by shippers would naturally tend to impair the ability of the carrier to meet the demands of commerce, and lessen the facility of transportation.

The case of *Lane v. Old Colony & Fall River R. R. Co.* 14 Gray (Mass.) 143, is somewhat similar in principle to the case in hand. In that case the railroad company had placed a shipment of coal in a bin on the company's ground to be removed by the consignee, and after a part had been hauled away, the consignees refused to pay the freight and storage charges. It was held, that the railroad company still had a lien on the coal which had not been hauled away for such charges. We think in principle there can be no difference between a delivery of the coal in a bin to be taken and hauled away by the consignee, and a delivery of the lumber on the car on the Railway Company's "team track" for a like purpose.

Our conclusion is, that a lien for the subsequent charges for car service attached to the lumber in favor of the Railway Company. The evidence being without conflict, the trial court erred in refusing the general charge

[Gentry v. Lawley.]

requested by the defendant. And for this error the judgment will be reversed and the cause remanded.

Reversed and remanded.

McClellan, C. J., Haralson and Tyson, J.J., concurring.