## Edward G. Davies v. Michigan Central Railroad Company.

### Gen. No. 13,000.

1. COMMON CARRIER—*when not duty of, to unload freight.* When a car loaded with fruit in baskets is, at the consignee's request, taken for unloading to a platform so placed and constructed that the fruit will be liable to damage from the weather, and also liable to be stolen if taken from the car, it is not the duty of the defendant to unload the car.

Action of assumpsit. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed March 22, 1907.

DOUGLAS C. GREGG, for appellant.

WINSTON, PAYNE & STRAWN, for appellee; F. S. WINSTON and RALPH M. SHAW, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment for the defendant in an action of *assumpsit* brought to recover the cost of unloading certain carloads of fruit consigned to plaintiff and carried by the defendant from Michigan to Chicago during September and October 1898. As to the number of carloads so carried and unloaded and the reasonable cost of unloading each car, there is no controversy.

The defendant has had, since 1893, at its freight yard in Chicago, three places for unloading freight; a freight house which is covered and enclosed, into which cars are run, and which affords a safe and convenient place for unloading and storing of freight; a team track upon which cars loaded with coal, lumber and similar freight are placed for unloading, and a platform called a fruit platform. This platform is on a level with the floor of the car; on one side of it are placed the cars, on the other side the wagons, and the fruit is unloaded from the cars and loaded into the wagons over it. The platform has a roof, but its sides and ends are not enclosed. This fruit platform has since 1893 been used for unloading cars loaded with fruit in carload lots; that is, loaded with fruit consigned to one consignee, but has not been used for unloading fruit shipped in less than carload lots, that is, fruit shipped in one car to different consignees.

To the plaintiff in each year from 1893 to 1898 were consigned large numbers of carloads of fruit shipped in carload lots. At his request said cars were placed by the defendant alongside of the fruit platform, and were all unloaded by him at his own expense. In September 1898 he demanded that the defendant unload the fruit from the cars to the platform. The

fruit trains were scheduled to arrive between four and five o'clock in the morning, but were often late. Defendant, in answer to said demand, while denying that it was its duty to unload fruit when shipped in carload lots, offered to take the cars consigned to the plaintiff to its freight house and unload them there in their turn, beginning at seven in the morning, when the usual business of the day began, but refused to unload said cars at the fruit platform upon their arrival. Plaintiff refused to accept defendant's offer to unload the cars at the freight house and during the remainder of the season of 1898 the cars consigned to plaintiff were, at his request, placed alongside of the fruit platform by the defendant and were then unloaded by the plaintiff in the same manner that carloads of fruit consigned to him had been unloaded by him from 1893 to 1898.

The plaintiff did not put in evidence a bill of lading of any of the cars in question, nor give any evidence tending to prove a special agreement in reference to the unloading of said cars.

In Schumacher v. C. & N. W. Ry. Co., 207 Ill. 199-206, it was said that: "bulk freight in carload lots, by the uniform rule and custom of this country, are to be loaded and unloaded by the shipper and consignee. Small or package freight, of such character and bulk that that belonging to many distinct owners may be shipped in a single car, is commonly loaded and unloaded by the transportation company." The question in that case related to a carload of coke, and the question as to the circumstances under which it is the duty of the carrier to unload what is called "package freight" was not involved.

In Hutchinson on Carriers, sec. 711, it is said that: "Small or package freight belonging to many owners and usually carried in a single car is ordinarily unloaded by the company transporting it."

We think that "package freight," as the term is used in Schumacher v. C. & N. W. Ry. Co., *supra,*

and in some of the other cases cited, does not mean freight in parcels or packages as distinguished from loose freight, but means freight that is consigned to different consignees and shipped in the same car, that is, freight in less than carload lots. This view finds support, we think, in the case of Schumacher v. C. & N. W. Ry. Co., *supra*. There the freight was coke shipped in carload lots, and it was held that it was the duty of the consignee to unload the car. The attention of the court was called to C. & N. W. Ry. Co. v. Jenkins, 103 Ill. 588, where it was contended that a contrary rule was laid down as to unloading paper from a car, and the court said (pp. 212, 213), "That case seems to have related to or grown out of the shipment of goods in less quantity than a carload lot." If the distinction is between loose freight and freight in packages or parcels, then a carload of apples or salt placed loose in the car must be unloaded by the consignee, and a carload of apples or salt in barrels must be unloaded by the carrier. A carload of lumber must be unloaded by the consignee (Gregg v. I. C. R. R. Co., 147 Ill. 550) but a carload of lath or shingles in bundles must be unloaded by the carrier.

But the question here presented is not whether it was the duty of the carrier to unload the cars in their turn at the freight house, but whether it was its duty to unload such cars on their arrival, at four or five o'clock in the morning, at the fruit platform, where the cars were placed at the request of the defendant.

The consignee of a carload of freight has the right to direct that the car be placed by the carrier at a place suitable and convenient for him to unload the same if he intends to unload the car, for in such case the placing of the car at the place directed by the consignee is a delivery of the freight to the consignee. But when freight is unloaded by the carrier, it is his duty to see that the freight is not damaged or stolen after it is unloaded. The platform in question afforded

little protection for the fruit, either against the weather or thieves, and while it may have been all that was required or necessary for unloading fruit directly over the platform from the car to a wagon, it was not suitable for storing fruit after it was unloaded.

We think the trial court did not err in holding that it was not, under the facts and circumstances shown by the evidence in this case, the duty of the defendant to unload the cars in question, and the judgment will be affirmed.

*Affirmed.*