## E. St. John, Appellee, v. Illinois Central Railroad Company, Appellant.

1. Common carriers—*burden to establish termination of relation of carrier.* By showing delivery to the carrier and failure to deliver by the carrier the burden is cast upon the carrier to show that at the time the loss sued for occurred its liability as a carrier had ceased.

2. Warehousemen—*extent of liability of.* A warehouseman is liable only for ordinary care and diligence in the preservation of property committed to its care.

3. Instructions—*ignoring material issue.* An instruction which ignores a material issue in the cause is erroneous if it concludes with a direction to the jury to find in a particular way, and such an instruction is not cured by the contents of other instructions given.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cumberland county; the Hon. William B. Scholfield, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 15, 1912.

Brewer & Brewer, for appellant; John G. Drennan, of counsel.

Emery Andrews, for appellee.

Mr. Justice Puterbaugh delivered the opinion of the court.

This suit was brought before a justice of the peace, and from thence taken by appeal to the Circuit Court, where trial resulted in a verdict and judgment in favor of the plaintiff for $152.78. The undisputed facts appearing in evidence are that the plaintiff shipped a car-load of hay from Bradbury, Illinois, a station upon the defendant's railroad, to Chicago, Illinois; the hay was billed in the name of the plaintiff to his order "Notify Van Wie & Moorehead." The plaintiff attached to the bill of lading a sight draft upon Van Wie & Moorehead of Chicago, and delivered the same to the First National Bank of Toledo, Illi-

nois. The car arrived in Chicago in good condition, on September 10, 1910, and was afterwards, while on track, destroyed by fire. One of the important issues in the case is whether or not at the time the hay was destroyed, the defendant bore to the same the relation of common carrier or that of warehouseman. In Schumacher v. Ry. Co., 207 Ill. 199, the court defines and distinguishes the two relations in the following language: ''Railroads as to freights committed to their charge, during the period of transportation and until they are delivered, bear two well recognized relations. While in transit and for a reasonable time after reaching the point of destination, they owe the duties and bear the relation of common carriers, and when the car containing the freight is delivered to the consignee upon his own track, or at the place selected by him for unloading, if he have one, or to the consignee upon the company's usual and customary track for the discharge of freight, with reasonable and proper opportunity to the consignee to take the same, or when placed in the warehouse of such company or the warehouse of another selected by them, in any and all such cases such companies then bear to such freight the relation of warehouseman.''

The plaintiff by showing delivery to the defendant for transportation of the hay in question, and the failure to deliver the same, cast upon the defendant the burden of showing that at the time the hay was destroyed its liability as a common carrier had ceased. In the event of its failure to make such proof, the burden was cast upon it to prove that the loss of the hay was due to the act of God or the public enemy. R. Co. v. Montgomery, 39 Ill. 335; Express Co. v. Wilson, 81 Ill. 339. On the contrary, if the relation of the defendant to the hay was that of a warehouseman, it was liable only for ordinary care and diligence in the preservation of the property. R. Co. v. Montgomery, *supra;* R. Co. v. Carter, 165 Ill. 570.

It will be seen that the question as to whether or not

the liability of the defendant was that of a common carrier or of warehouseman, was of special importance, and perhaps decisive of the defendant's liability. Sweeney, the yard clerk of the defendant, testified that he was on duty in the yards of the defendant on September 10, 1910, from 6:45 A. M. until noon; that he saw the car in question at 7 o'clock A. M. on one of the unloading tracks of the defendant, known as the team track; that the car was carded ''Hay—Shippers Order —Notify Van Wie & Moorehead;'' that the seals on both sides were intact; that as was the custom, he posted in the scale office a copy of his track report, which contained the following entry; ''Car 11154 Hay Arrived 11:07 A. M. Shippers order Van Wie & Moorehead;'' that on the morning in question Van Wie called at the scale office at about 9 o'clock, ascertained the number of the car, and asked what track it was on, and that witness told him; that he returned at 9:30 o'clock and told witness it was a fair car of hay. Van Wie testified that he was advised at about 9 or 9:30 o'clock in the forenoon of September 10th that the car in question was at the Weldon yards; that he went to where the car was, opened both doors and examined the hay, breaking the seals in order to do so; that he was not certain whether he closed the doors or not. The evidence shows that the Weldon yard or team track begins at Fourteenth street and runs south about a block and a half, and that it was the usual and customary track for delivery of freight by the defendant. The evidence of the defendant's watchman shows that the hay in the car was set on fire by a small boy at about 3:30 o'clock in the afternoon of the day in question.

The foregoing evidence, which is practically uncontradicted, clearly shows that the car was delivered upon the defendant's usual and customary track for the discharge of freight, which was sufficient in the absence of proof that a particular place of delivery was designated by the plaintiff; that Van Wie &

Moorehead had full notice of its arrival, and that they and the plaintiff had reasonable and proper opportunity to take the same. In such state of the proof the liability of the defendant was that of a warehouseman only, and the only question for the determination of the jury was whether or not it exercised ordinary care and diligence for the preservation of the property; the burden being upon it, the defendant, to show such degree of care. Cumins v. Wood, 44 Ill. 416; Funkhouser v. Wagner, 62 Ill. 59.

The first instruction given at the request of the plaintiff told the jury that proof of the delivery of the hay by the plaintiff to the defendant at Bradbury made a *prima facie* case; that the burden was then upon the defendant to account for said hay, and that if they believed from the evidence that the defendant failed to deliver said hay to the plaintiff or to Van Wie & Moorehead, as provided by the bill of lading, their verdict should be for the plaintiff. It will be seen that the instruction, which directs a verdict, requires that the defendant in order to escape liability as an insurer, must have actually delivered the goods to the plaintiff or Van Wie & Moorehead, and ignores the question as to whether its liability was that of warehouseman or of carrier. The instruction was misleading in this respect and the error was not cured by other instructions given. The rule invoked by the plaintiff, that the entire series are to be considered in determining whether the jury could have been misled is not applicable when the improper instruction directs a verdict. Mooney v. City, 239 Ill. 414.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*