## Mary King, Mary King Halsey and Fanny King, Ex'rs, v. Rhoads & Ramsay Company.

1. ACCOUNT STATED—*When Conclusive by Acquiescence.*—As between the parties, an account rendered and not objected to within a reasonable time, becomes a settled account which is conclusive as between the parties, unless some fraud, mistake, omission or inaccuracy is shown.

Claims in Probate.—Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded. Opinion filed January, 21, 1897.

Dow, WALKER & WALKER, attorneys for appellants.

HOLLETT & TINSMAN, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The Supreme Court, in 26 Ill. 390, and 50 Ill. 351, eulogized living lawyers; why may we not place here some

words of praise of one who, after forty years of faithful service at the bar of this county, and in courts out of it to which that service led him, rests from his labors? William H. King, for many years before his death, was one of the most prominent as well as one of the most successful of the lawyers of Chicago; and the gains attending that success were not dissipated by imprudence, but carefully accumulated into a considerable fortune left to his family.

Yet, in looking into the facts of this case, we must exclude our personal knowledge of the man, and decide only by what appears of record. The first thing that arrests attention is that by the account presented in the Probate Court, less than three months after his death, it would appear that the appellee had supplied him with coal from the last day of March, 1885, to October 4, 1889, to the amount of $659.51, upon account of which all that the appellee ever received was $21.75, in the fall of 1886. The generosity of sewing machine companies, in which Judge Walker disbelieved in Lucas v. Campbell, 88 Ill. 447, is niggardly beside that of such a coal dealer.

But the strangeness of the transaction is removed when we see by the record that March 30, 1889, a student in Mr. King's office found him with a coal bill purporting to come from the appellee, whose bill at that time amounted to $459, less the credit of $21.75, and that the student, by Mr. King's direction, then made out and delivered to the appellee a bill for legal services and costs paid for the appellee, amounting to $788.40, and that thereafter, during that year, the appellee, as appears by its bill, supplied Mr. King with coal to the amount of $200.51, with nothing paid on it. It is true that the bill rendered by Mr. King purported to be for services rendered and costs paid by his firm of King & Packard; but the usage of adjusting reciprocal accounts—partnership against individual and *vice versa*, is so frequent that it may well be looked to in explanation of transactions upon which death has set the seal of silence. It should have been held that upon these facts, without a word of explanation from any source, the parties had

treated the coal bill which had then accrued as being extinguished by, and the residue as in satisfaction of, the bill for legal services and costs. True, acquiescence, when relied upon, must be proved, but the proof will vary in one case from that in another. No one could doubt the intention of Mr. King in sending his bill. The appellee had notice by the circumstances of what that intention was, and by October 4th, in the same year, had sent him thirty-one tons of coal, without, so far as appears, any demand or expectation of any money for it.

Mr. King lived more than two years after the last delivery of seven tons, October 4, 1889, and nothing was done by either party as to their accounts.

The appellee does not argue that the bill of Mr. King did not come to its possession, if it did so argue, the proof would rebut the argument.

The witness went to the office of the company and inquired for the gentleman who was, in fact, treasurer of the company, was sent to the back end of the office and was there met by a gentleman presenting himself as the individual sought for. Edmanson v. Andrews, 35 Ill. App. 223.

The court peremptorily instructed the jury to find for the appellee. The verdict should have been for the appellants.

The judgment, which is against the personal representatives of Mr. King, is reversed, and the cause remanded.