## Woolner Distilling Company v. Peoria & Eastern Railway Company.

### Gen. No. 4,816.

1. ABSTRACT—*what should show.* An abstract should show the errors complained of.

2. DEMURRER—*when action of court in sustaining, cannot be complained of.* The action of the court in sustaining a demurrer to pleas cannot be complained of where the party making the complaint admits that the defenses set up by the pleas could have been introduced under the general issue.

3. COMMON COUNTS—*when recovery may be had under.* Recovery may be had under the common counts where nothing remains to be done but the payment of money.

Assumpsit. Appeal from the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed October 10, 1907.

**Statement by the Court.** The Woolner Distilling Company operates a distillery in Peoria, and uses about five carloads of coal per day. It has contracts with various coal companies situated on different lines of railroad for the shipment of coal to it. The coal from one mine is shipped to it over the Peoria & Eastern Railway, which is a branch of the Big Four Railroad. All the cars for whose detention this suit is brought were Big Four cars, and were marked "C. C. C. & St. L." In order that the distilling company might never be short of coal to keep its plant in constant operation, it so controlled its orders for cars of coal as to have from twenty-five to forty-five or fifty carloads of coal in Peoria at all times. All switching of freight cars reaching Peoria on any of the railroads entering in that city is done by and over the tracks of the Peoria & Pekin Union Railway Company, which will here be called the terminal. It acts as agent for the various railroads in switching and delivering carloads of freight. The distilling company only had room on its tracks for five or six carloads of coal, and it took all day for it to unload five carloads. The switch engine came to its plant each morning, took out the empty cars and filled its switch with five or six carloads of coal. It had no place whereon to receive the remaining twenty-five to forty-five cars of coal which its orders had brought into the city. The terminal had yards some distance west of the distilling plant, where cars could be stored, called the Kickapoo yards. They were the nearest and most convenient yards to the distilling plant. The terminal road placed in the Kickapoo yards, as fast as they were received, cars which were destined for that part of the city, including the cars of coal consigned to the distilling company. These cars were put into the yard at the west end and pushed east, and the cars which had been earliest received were therefore always near the east end of the string of cars. When delivering cars from these yards, it took them from the east end. This practice caused the cars which had been longest in the yards to be first delivered.

The Peoria & Eastern Railway Company belongs to a

car service association, with many other railroads, and that association had a rule that if a car of merchandise was not unloaded within forty-eight hours after the consignee was notified that the car had been received and was at its disposal, a charge of one dollar per day would be made for the storage of such car. Such charges were made by the Peoria & Eastern Railway Company against the distilling company, until there were $297 of such charges unpaid, beginning with a car for which charges began on June 9, 1904, and which was held until June 30, 1904, and ending with a car for which charges began on March 22, 1905, and which was discharged March 27, 1905.

The Peoria & Eastern Railway Company brought this suit against the Woolner Distilling Company to collect said charges. It filed the common counts, and, in obedience to a motion by defendant, a specific bill of particulars, giving the number of each car, the initial letters on each car, the date when the car service charge began, the date when the car was released, and the amount of the storage or demurrage charges. Defendant filed the general issue, a plea of set-off and various other special pleas, to which special pleas a demurrer was sustained, and then filed a number of other special pleas, to which a demurrer was sustained. The case went to trial upon the general issue and the plea of set-off. Defendant states that it abandoned its plea of set-off during the trial. There was a verdict and a judgment for the plaintiff for $148.50 from which defendant prosecutes this appeal.

JOSEPH A. WEIL, QUINN, QUINN & OTMAN and ISAAC J. LEVINSON, for appellant.

SHEEN & MILLER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The abstract of the bill of exceptions does not show that the motion for a new trial entered by appellant was denied, nor does it contain any exception to the denial of that mo-

tion nor to the entry of judgment on the verdict. It is a familiar rule of practice in the courts of appeal of Illinois that the abstract must show the errors complained of, and that if it does not show the error, nothing is presented for consideration. The court may look into the record for the purpose of affirming, but will not do so for the purpose of finding something not disclosed by the abstract for the purpose of reversing. Again, the briefs allege that the court erred in giving each instruction which was given at the request of appellee, and in refusing various instructions requested by appellant. The abstract does not show who presented and requested any of the instructions given or refused. As far as the abstract shows, the given instructions may have been requested by the appellant, and the refused instructions may all have been requested by the appellee. In this state of the abstract we would not be warranted in reversing the judgment because of anything that we may discover upon a search of the record, but we may look into the record for the purpose of finding whether the judgment is meritorious.

It is argued that the court erred in sustaining the demurrer to the amended special pleas. In another part of its brief, however, appellant contends that the matters set up in those special pleas could all be heard upon the general issue, and it declares in its brief that it presented various instructions based upon the subject-matter of those pleas, and which it claims the court erred in refusing. As appellant thus concedes that its special pleas amounted only to the general issue, it cannot be heard to say that it was error to sustain a demurrer thereto. One of the grounds of the demurrer was that each of said amended special pleas amounted to the general issue, and the brief of appellant confesses that that ground of demurrer was well taken.

The meritorious question in the case is whether the proof shows that appellee was entitled to recover. It is settled by Schumacher v. C. & N. W. Ry. Co., 207 Ill., 199, and the cases there cited, that while freight committed to the charge of a railroad company is in transit, and for a reasonable time after such freight reaches the point of destination, the rail-

road company owes the duty and bears the relation of a common carrier; and that when the car containing the freight is delivered to the consignee upon its own track, or at the place selected by it for unloading, if it have such a place, or is delivered to the consignee upon the railroad company's usual and customary track for the discharge of freight, with a reasonable and proper opportunity to the consignee to receive the same, or when such freight is placed in the warehouse of such railroad company, or in the warehouse of another selected by it, then in all such cases the railway company thereafter bears to such freight only the relation of a warehouseman. It is also settled that when a common carrier becomes a warehouseman at the point of destination of the freight, it has a right to charge for the storage and keeping of freight as a warehouseman for whatever time such freight remains in its custody after reasonable opportunity has been afforded the owner to remove it, and this in addition to its compensation for the carriage of freight. In the Schumacher case there was a rule of the company imposing a storage charge of one dollar per day after forty-eight hours, and while the reasonableness of the amount of the charge was not there discussed, it was treated as a reasonable rule so far as related to time. Appellant however says that appellee failed to make a case against it under this rule, for the reason that the terminal company had not placed any of these cars upon appellant's switch for unloading, nor was it intended or expected that appellant would unload the cars at the Kickapoo yards, which were three quarters of a mile or a mile from its distillery; that the terminal had not delivered the cars or ceased to be a carrier, and therefore the right to charge storage had not arisen. It is true that the facts of this case are not exactly the same as were the facts in the Schumacher case, but the principle we conceive to be the same. Appellant had room for only five cars at a time. It tells us in its brief that it was liable to a very severe penalty to the government of the United States if its distillery stopped even for an hour, and that it was because of that penalty that it kept orders far enough ahead

so that it always had on the railroad tracks in Peoria from twenty-five to forty-five cars, besides its switch full. It practically insists that because it had room for only five cars it had a right to compel the railroads to store the remaining twenty-five to forty-five carloads of coal for it at its pleasure and without any expense to appellant, and that it could defeat the right of the railroads to charge storage by not furnishing the railroads a place where the cars could be delivered. We think this position unjust. When the terminal had placed the cars in the Kickapoo yards and had notified appellant that they were ready for delivery, and forty-eight hours had passed and appellant was not able to receive them, the terminal had done all it could do to deliver the coal, and it is just that appellant should pay a reasonable charge for the storage of the cars. It could avoid this result by providing a place where the coal could be unloaded promptly which it had ordered in advance.

Appellant notified the Peoria & Eastern Railroad Company and the terminal company to deliver to it immediately all cars of coal arriving over the Big Four, meaning thereby the Peoria & Eastern, as it did not wish any demurrage charges to accrue in favor of that road. The terminal did not obey this order. If it had done so some of these storage charges would not have accrued. Appellant insists that this is a defense. The terminal refused to obey this order for two reasons: First, it was acting as delivering agent for quite a number of railroads. It was receiving loaded freight cars at all hours of the day and night from all directions consigned to this distilling company and other consignees. It owed a duty to the other railroads as well as to the Peoria & Eastern. It owed a duty to other shippers besides the company that shipped coal over the Peoria & Eastern to the appellant. It took the position that, because it was acting for all these railroads, it was its duty to deliver these carloads substantially in the order in which they were received, and that it would be doing an injustice to the other shippers and to the other railroads to deliver immediately upon their reception the cars of coal coming to the distilling com-

pany over the Peoria & Eastern, and thereby hold back that much longer cars of coal coming from other shippers to the distilling company over other railroads. In our judgment this position was fair and just, and for that reason the terminal had a right to disobey the order. But the proof shows another sufficient reason. In the method in which it conducted its business the cars earliest received by the terminal were always in the east end of the yards, and when it could not immediately deliver the cars received from the Peoria & Eastern it placed them on the west end, and when other cars were put in afterwards they then became embodied in the mass of cars at the west end. The proof shows that it would have been very much more expensive and difficult to get out those cars of the Peoria & Eastern last received and deliver them when appellant's switch track was empty and ready to receive them, than to take the coal cars at the east end which were consigned to the distilling company. The terminal company had the right to pursue the course it did in refusing to give appellant a preference in delivering to it Big Four cars, because it was inconvenient and expensive to take those cars out of the center or west end of the yards. It is to be noted also that if the terminal had obeyed this order, it would not have lessened the storage charges in the gross to which appellant subjected itself by its manner of doing business. If those cars had been delivered out of their order, other cars shipped to the distilling company over other railroads would have been held back that much longer, and the same amount of storage charges would have accrued against the distilling company, but in favor of other railroads than appellee.

The right of appellee to a recovery rests upon two other grounds. Appellee proved that at an interview between the manager of appellant and the manager of the car service association, which was the agent of all the railroads centering at Peoria, held after the claim here sued upon had begun to accrue, appellant's manager stated that it was his opinion that the shipper ought properly to pay these charges because they had shipped more coal than had been ordered

of them and that he had wanted to take the matter up with the shipper and get the shipper to pay the charges, but that if he could not get the shipper to assume the charges appellant would pay them, or he as manager of appellant would pay them. This was after there had been much controversy between the railroads and appellant for the failure to pay these storage charges generally; and it is evident from all the proofs that if this promise had not been made, it was at least probable that the delivery of the cars of coal to appellant would have been stopped until the charges were prepaid or else that the coal would have been refused admission to the city and to the Kickapoo yards. Again, appellee sent many bills to appellant for these charges, showing the number of the car, the lettering of the car, the date when the charge commenced, and date when the car was discharged, and the amount of storage charges; and appellant did not at any time question the correctness of these charges in any particular. Its sole answer was that it conceived that the shipper ought to pay, and that the shipper was to deliver the coal at its plant, and that it was endeavoring to induce the shipper to pay. While it did not thereby admit its own liability, it did admit the correctness of the charges in every other respect, under the cases cited by us in Weigle v. Brautigan, 74 Ill. App., 285; see also King v. Rhoades & Ramsey Co., 68 Ill. App., 441.

Appellant insists that there can be no recovery under the common counts. The rule and custom of all the railroads centering in Peoria to charge demurrage at one dollar per car for each day after the first forty-eight hours, had been in force in Peoria for some sixteen years. Appellant knew it, and knew these charges were being made, and continued to cause its cars to be stored on the railroad tracks. It received repeated bills itemizing the charges, and made no objection to the correctness of the bills, and it promised early in the running of this bill to pay the charges if the shipper would not, and by that promise secured the continued delivery of the cars without prepayment. The charges have been earned, and nothing remains to be done but to pay the

money, and we are of opinion that recovery can be had under the common counts.

Appellant claims that other consignees at Peoria were charged less than one dollar·per car, and therefore it should not pay that rate. This claim is founded upon the fact that on some occasions when like bills had been presented by this and other roads to other consignees, defenses had been set up against the whole or some portion of the charge, sometimes on the ground that the railroads 'had not properly handled the cars; sometimes on the ground of strikes and other circumstances which the consignee claimed made it inequitable that it should stand the entire charge; and in some such cases the railroads had settled with consignees their counterclaims in such a way as to reduce the charge. We see nothing in this to overcome the prevailing custom and rule or to relieve appellant.

Appellant complains of various rulings of the court upon the testimony. We have examined these and think appellant was not seriously prejudiced by any of the rulings of which it complains. The evidence shows that the earning capacity of a car is three dollars per day, and it is obvious that a storage charge of one dollar per day for the use of a car is not unreasonable, and whether it be treated as a question of law for the court or of fact for the jury, a different conclusion could not be reached.

Appellant discusses at great length the instructions given and refused. We think it sufficient to say that we are of opinion that the criticisms upon the rulings of the court upon the instructions are in the main not well taken. Most of those criticisms are in effect disposed of by what we have already said upon the merits of the case. Appellant claims that the instructions should have recognized its theory that under the facts appellee was still a common carrier and not a warehouseman, and could not become a warehouseman until it placed the cars on appellant's switch. Its position on the instructions is untenable because that theory is unsound, as applied to the facts here. If there are any slight inaccuracies in the instructions, appellant has not been injured

thereby, and has no ground of complaint.   It has succeeded in reducing the allowance to fifty cents per day per car, which is little more than nominal.   The Supreme Court in the Schumacher case, *supra,* said that the charge of one dollar per day per car was little more than nominal.   Substantial justice has been done to appellant, and the judgment is affirmed.

*Affirmed.*