302    APPELLATE COURTS OF ILLINOIS.

C. & E. R. Co. v. Berwind-White Coal Min. Co., 171 Ill. App. 302.

# Chicago & Erie Railroad Company, Appellee, v. Berwind-White Coal Mining Co., Appellant.

## Gen. No. 16,955.

1. PRACTICE—*when question not before court.* No question of the correctness or reasonableness of demurrage charges on cars of coal is before the court where no claim is made that the charges did not accrue or were unreasonable or that they were not the customary and usual charges.

2. COMMON CARRIERS—*right to collect demurrage prior to Hepburn Act.* It would seem that a carrier's right to collect demurrage on cars of coal delivered before the Hepburn Act went into force is not affected by failure to file tariffs, since at that time such failure merely rendered the carrier subject to a penalty.

3. INTERSTATE COMMERCE COMMISSION—*must determine form and style of tariffs filed.* The style and form of documents filed with the Interstate Commerce Commission setting forth demurrage charges and tariffs are for the commission to determine and not for the trial court.

4. COMMON CARRIERS—*demurrage and transportation charges distinct.* Railway demurrage charges are no part of the transportation charge.

5. COMMON CARRIERS—*when tariff schedules showing demurrage charges duly filed with Interstate Commerce Commission.* Demurrage rules and charges of a railroad company are duly filed with the Interstate Commerce Commission, where a book containing the rules of an association of railroad companies including the one in question is filed with the commission and a day or so later a notice of the exact charge is filed.

6. COMMON CARRIERS—*when may charge for demurrage.* A common carrier is not deprived of its right to make a charge for demurrage though the rules and tariffs are separately filed.

7. COMMON CARRIERS—*when demurrage charge not invalid.* A charge for demurrage on cars is not invalidated though the rules regarding such demurrage were not posted in two public places in the company's depot as required by the rules of the Interstate Commerce Commission.

8. EVIDENCE—*when showing agreement to pay demurrage charges.* On action for demurrage on 148 cars of coal it appears that the consignee knew of the charge and agreed to pay it where, on delivery to the consignee of notice of the arrival of cars, reconsignment orders were made out by him on all but one or two

C. & E. R. Co. v. Berwind-White Coal Min. Co., 171 Ill. App. 302.

of which appear the typewritten words "We pay car service," or "Collect car service at this office."

9. COMMON CARRIERS—*effect of failure to file demurrage tariffs with commission.* On action for demurrage, failure to file tariffs or the filing of defective ones with the Interstate Commerce Commission has no legal bearing on the right to recover the ordinary and usual charges.

10. COMMON CARRIERS—*right to make car service charge.* A carrier's right to make car service charges is a common-law right.

11. COMMON CARRIERS—*when may make demurrage charges.* A railway company may make car service charges on cars consigned flat to Chicago which are never delivered in Chicago but are held at yards in Hammond, Indiana, for reconsignment orders, where such yards are the regular holding yards in such cases and have been for about twenty years, and where the company has no yards or tracks in Chicago.

Appeal from the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 4, 1912. *Certiorari* denied by Supreme Court (making opinion final).

POMEROY & MARTIN, for appellant.

CALHOUN, LYFORD & SHEEAN, for appellee; EDWARD W. RAWLINS and C. D. CLARK, of counsel.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This action was brought by the Chicago & Erie Railroad Company, appellee, in the Municipal Court of Chicago against the Berwind-White Coal Mining Company, appellant, to recover demurrage or car service charges on 148 carloads of coal, the charges accruing while the cars were being held in appellee's yards at Hammond, Indiana, awaiting consigning orders.

The cars in question were shipped by appellant from Berwind, West Virginia, consigned to itself flat at Chicago. The shipments cover a period from May 10, 1906, to December 7, 1906. Appellant had no tracks or storage yards in Chicago, but had an office in the Fisher Building in that city. Appellee's holding yards for carload freight billed flat to Chicago are at Ham-

mond, Indiana, and all cars so billed are held at that point for re-consignment. It has never been the practice or custom to bring cars consigned flat to Chicago into the city, as Hammond is the regular hold-out yard for Chicago for appellee, and if brought into the city they would only have to be hauled out again through the Belt Line, or some other road, on re-consignment orders.

This method and practice of handling carload shipments had been in vogue for twenty years or more. From time to time as the cars arrived at Hammond, appellee sent to appellant by messenger arrival notices. These notices were delivered at appellant's office in Chicago, and appellant in turn mailed to appellee's agent at Hammond consigning orders directing appellee where to send the coal. This was done in the case of each and every car involved in this action. All of the original re-consigning orders are attached to the record, and with but one or two exceptions there is typewritten at the bottom of each of those re-consigning orders the words, "We pay car service," or the words "Collect car service at this office."

During the time in question demurrage charges at the rate of one dollar per day, after deducting the free time and holidays, accrued to the amount of $1,785.

The appellant offered no evidence in the court below, and the court directed the jury to find the issues for the plaintiff and to assess appellee's damages at the sum of $1,785, there being no dispute as to the amount, and judgment was entered on the verdict.

The contention of appellant is that there was no legal tariff in force covering the demurrage, and therefore it could not legally be assessed, and that even if there had been a tariff the carrier could not assess demurrage until the shipments had reached their destination. It is also contended on behalf of the appellant that there were errors committed in the admission of evidence on behalf of appellee.

No claim whatever is made by appellant that the

C. & E. R. Co. v. Berwind-White Coal Min. Co., 171 Ill. App. 302.

amount of demurrage charges in question, at the rate of one dollar per day, did not actually accrue while the cars were being held in the storage yards at Hammond awaiting re-consignment, or that the charges made were not reasonable or the customary and usual ones, so that no question as to the correctness or reasonableness of the charges is before the court. (Schumacher v. C. & N. W. Ry. Co., 207 Ill. 199.)

The claim of appellant is that appellee was not entitled to make any charge at all for demurrage, for the reasons, 1st, that appellee did not file with the Interstate Commerce Commission tariff schedules properly setting out the charges; and, 2d, because appellee did not make a proper delivery of the cars.

The record shows that sixty-eight of the cars in question were shipped and delivered prior to August 29, 1906, the time the Hepburn Act went into force; and appellee's right to collect the $1,163 assessed on those cars is in no way affected by the tariffs, as under the act in force at that time the failure to file tariffs simply rendered the carrier subject to a penalty, and in no way affected its right to make charges.

Appellee's contention on the other hand is that it had complied with the rules of the Interstate Commerce Commission, and it is therefore immaterial to discuss the tariffs in reference to their applicability to any particular part of the shipments. The evidence shows that the shipments were made and delivered in 1906, part of them just prior to and a part just after the Hepburn Act went into effect.

By the Interstate and Hepburn acts the Commission may determine and direct the form in which schedules shall be prepared and arranged, and may change the form from time to time as it shall find expedient. Appellee contends, and we think with reason, that the rules and regulations on file with the Commission at the time the shipments were made, were a sufficient compliance with the rules to authorize the collection

of the charges in suit, even under the present requirements of the Commission.

For some time prior to the time in question there was in existence an association composed of the various railroads entering Chicago, known as the "Chicago Car Service Association," and they had promulgated certain rules covering demurrage in the territory bounded by Lake Michigan on the east, Waukegan on the north, thence following and including the line of the Elgin, Joliet & Eastern Railway Company, to and including Griffith, Indiana, thence north to Edgemoor, Indiana, on the shore of Lake Michigan. This association published a book of rules entitled "Car Service and Storage Rules," a copy of which is attached to the record. On page 3 of that book appears the names of the various railroads comprising the association, including that of appellee. In this book was set forth in detail the rules to be followed by the railroad in assessing demurrage on cars brought within the territory of the association, with reference to free time allowing for loading, unloading and re-consignment.

Under date of August 29, 1904, appellee filed a copy of those rules with the Interstate Commerce Commission. It is true that in the book no specific mention is made of the amount of the charge, but a day or two later, it filed with the Interstate Commerce Commission a statement referring to the book, and in part as follows:

· "In connection therewith beg to advise that our rates will be: Car service, one dollar ($1) per day or fraction thereof."

Later, under date of October 18, 1905, it filed with the Commission an amendment to the rule, changing the free time from seven to five days, and later certain other amendments were filed which are not material to the present case. These documents, as the record shows, are all printed in plain, legible type, and the rules and regulations therein contained are clearly set forth and

can be easily and readily understood, and are such that any one desiring to find out from the documents that are on file with the Commission what the demurrage charges in the territory of the Chicago Car Service Association were, could readily have done so.

Counsel for appellant make numerous criticisms of the publications. Their first criticism is as to the style and form of the documents themselves. Those, however, are matters entirely for the Commerce Commission to determine. It was not for the trial court, and is not for this court to determine or fix the particular form or style of tariffs, or the size of the type in which the tariffs are to be printed. The provision of the act touching this point is:

"The Commission may determine and direct the form in which the schedules required by this section to be kept open to public inspection shall be prepared and arranged, and may change the form from time to time, as shall be found expedient."

It is further urged by counsel for appellant that the demurrage rules and charges filed do not refer specifically to any tariffs which give the transportation rates. In our opinion demurrage charges have nothing to do with transportation rates. In Suffern, Hunt & Co. v. I. C. & W., 7 I. C. C. R. 272, the general rule is laid down as follows:

"Whether a rule or regulation concerning transportation can lawfully be established by the issuance of a schedule or document which neither prescribes rates, fares or charges, nor refers to any rate or fare schedule, depends upon the nature of the rule or regulation. If rules or regulations in any wise change, affect or determine any part of the aggregate of such rates, fares and charges, they must be stated on the schedule of such rates, fares and charges."

We think it is clear that such a rule would have no application to demurrage charges, as they are no part of the transportation charge. Before a shipment is made it cannot possibly be known what the demurrage charges will amount to, or whether there will be any

at all. If the cars are unloaded or re-consigned within free time, there will be none. In every case the question of whether or not there will be car service depends upon the consignee or owner, or upon conditions which cannot possibly be known in advance. Demurrage charges are no part of and are separate and distinct from transportation charges, and do not arise, if at all, until the transportation has ended. Furthermore, it has been specifically held that the fact that the demurrage rules and tariffs are filed separately, does not deprive the carrier of the right to make a charge. (Cudahy Packing Co. v. C. & N. W. Ry. Co., 12 I. C. C. R. 446.)

In this case the demurrage rules and charges were duly filed with the Commission.

It is further objected that the evidence does not show compliance with the rules of the Interstate Commerce Commission, in that it does not show that the rules in question were kept posted in two public places in its depot. In Texas & Pacific Ry. Co. v. Cisco Oil Mill, 204 U. S. 449, it was held that the publication of the rules was not a condition precedent to the establishment and putting in force of tariff rates, but that the rates were established when a schedule thereof was filed with the Interstate Commerce Commission, and that the other provisions in the act had for their objects merely the affording of special facilities to the public for ascertaining the rates actually in force. We think the contention that the appellee had failed to comply with the rules of the Interstate Commerce Commission with reference to posting the tariff in its depots is without merit. (Texas & P. R. R. Co. v. Abilene Oil Co., 204 U. S. 426; Erie R. R. Co. v. Wanaque Lumber Co., 75 N. J. Law, 878.)

It is not claimed or contended that the demurrage charges in question did not accrue, or that they were not the ordinary and customary charges, or that they were not reasonable. We think upon the evidence, that appellant not only knew that it was required to pay

car service, but it agreed to do so. The right of the carrier to make car service charges is a common law right and not one which is given by statute. The right existed before the Interstate Commerce Commission was created. The mere fact that a carrier has failed to file tariffs or has filed defective tariffs, does not, in law, permit a consignee or owner to escape the payment of the ordinary and usual charges made. If the appellee has failed to file tariffs it will be dealt with by the Interstate Commerce Commission on proper application, but that has no legal bearing upon the question presented in this record.

It is contended, on behalf of appellant, that the court erred in admitting in evidence certain records which were kept by appellee at its office at Hammond. The objection made is that they were secondary evidence, and not the best evidence. In our opinion the objection is not well taken. We think the evidence was properly admitted.

As to the contention that appellee was not entitled to make the car service charges in question because the cars were held at Hammond awaiting the re-consigning orders, and were not actually brought within the city limits of the city of Chicago, we think very little need be said. The undisputed evidence shows that the yards at Hammond are the regular Chicago yards of appellee for holding cars which are billed flat to Chicago. Hammond was the customary and convenient place for holding cars and had been upwards of twenty years. The record shows that appellant had no storage yards or tracks in the city of Chicago, and consequently could not take care of the cars had they been brought into the city. We think the contention of appellant upon this point cannot be sustained. (Woolner Distilling Co. v. Peoria & Eastern Ry. Co., 136 Ill. App. 479.)

We find no substantial error in the record and the judgment is accordingly affirmed.

*Affirmed.*