**LYMAN PERIN & CO, Inc v
PENNSYLVANIA RAILROAD CO**

Ohio Appeals, 1st Dist, Hamilton Co

No 4519. Decided Feb 19, 1934

Robert C. Porter, Cincinnati, for plaintiff in error.

Maxwell & Ramsey, Cincinnati, for defendant in error.

## OPINION

By ROSS, J.

The only question we consider of importance was the claim urged by the plaintiff in error that the tariff applied had not been published, and that the consignee was entitled therefor to the through and lower rates from points of origin to Cincinnati. That the cars moved from points of origin in Michigan to Adrian, were there inspected and reconsigned, and delivered at Cincinnati was admitted.

Section 6, Par. 1, of the Act to Regulate Commerce, Title 49, Art. VI, 49 U. S. C. A., (Interstate Commerce Acts, Annotated, Vol. 2, page 1413), provides as follows:

"Every common carrier subject to the provisions of this chapter shall file with the commission created by this chapter and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid, the separately established rates, fares and charges applied to the through transportation. The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part of the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected. The provisions of this section shall apply to all traffic, transportation, and facilities defined in this chapter."

There is no contention that the tariff in question was not filed with the interstate commerce commission. It is not contended that the printed tariff was not on file with the Commission or approved by it.

It is claimed that simply because copies of the tariff were not in the depot at Adrian, Michigan, the point where the shipments were reconsigned, the Railroad Company cannot collect the freight rate provided for in the tariff on file with the commission and approved by it.

The carrier not only had the right to collect such additional freight charges, but was subject to heavy penalties if it failed to do so.

The plaintiff in error is in error as to its construction of the act in question. The regulations as to posting are for the convenience of the public. It is claimed that the language "print and keep open for public inspection," means that the Railroad must have a copy of the appropriate tariff at the depot where the shipment is made. If such were the correct construction and is a requirement in addition to that of posting, it is perfectly plain that a most grievous burden would be placed upon the carrier to supply each of the many small stations throughout the country with a copy of the many tariffs which might apply to any shipment to a distant point. Such is not the law.

In the case of Berwind-White Coal Mining Co. v Chicago & Erie Rd. Co., 235 U. S., 371, at page 375 of the opinion, the court say:

"That allowing the demurrage conflicted with the Act to Regulate Commerce because no tariff on the subject was filed or published. The fact is that the railroad had complied with the law as to filing tariff sheets and had also long before the time in question filed a book of rules of the Chicago Car Service Association, of which it was a member, relating to liability for demurrage and a few days after had written the Commission a letter stating that the demurrage charge would be one dollar per day. The argument is that such documents were not sufficiently formal to comply with the law and hence afforded no ground for allowing demurrage. But the contention is without merit. The documents were received and placed on file by the Commission without any objection whatever as to their form and it is certain that as a matter of fact they were adequate to give notice. Equally without merit is the insistence that there was no proof that the documents were posted for public

inspection. Texas & Pac. Ry. v Cisco Oil Mill, 204 U. S. 449; Kansas City So. Ry. v Albers Comm. Co., 223 U. S. 573, 594; United States v Miller, 223 U. S. 599."

This decision affirmed Chicago & Erie Railroad Company v Berwind-White Coal Mining Co., 171 Ill. App., 302, wherein that court stated at page 308 of the opinion:

"In this case the demurrage rules and charges were duly filed with the Commission.

"It is further objected that the evidence does not show compliance with the rules of the Interstate Commerce Commission, in that it does not show that the rules in question were kept posted in two public places in its depot. In Texas & Pacific Ry. Co. v Cisco Oil Mill, 204 U. S. 449, it was held that the publication of the rules was not a condition precedent to the establishment and putting in force of tariff rates, but that the rates were established when a schedule thereof was filed with the Interstate Commerce Commission, and that the other provisions in the act had for their objects merely the affording of special facilities to the public for ascertaining the rates actually in force. We think the contention that the appellee had failed to comply with the rules of the Interstate Commerce Commission with reference to posting the tariff in its depots is without merit, (Texas & P. R. R. Co. v Abilene Oil Co., 204 U. S. 426; Erie R. R. Co. v Wanaque Lumber Co., 75 N. J. Law 878)."

One other point is worthy of comment. The tariff which it is claimed is ineffective by reason of failure to have the same on file in the Adrian office provides as follows:

"Routing when specified herein is that ordinarily and customarily to be used. If, from any cause arising from the exigencies of errors of carriers, property is sent via other junction points or routes, but over the lines of carriers parties to the tariff naming the rates, which is subject to this publication, the through rates named in such tariff will apply."

It is claimed that the carrier having made an error, the through rate applied. As far as the record shows there was no error in the "routing". This is obviously the error referred to, not an error in the computation of a rate provided by the published tariff.

In this case there is no question that as

far as the routing was concerned the cars moved as was intended by the shipper and reconsignor. The question was whether a through or a local rate was applicable and the published tariff required a local rate.

The judgment is affirmed.

HAMILTON, PJ, and CUSHING, J, concur.