## American Express Company v. R. C. Stuart.

1. EXPRESS COMPANY—*care required of money order agent.* A person acting for an express company as its agent in selling its money orders, in caring for the money of such company, is bound only to the exercise of that degree of care and caution which would be exercised by an ordinarily careful and prudent person under like or similar circumstances.

2. VERDICT—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence merely because the Appellate Court might, had it considered the evidence initially, have reached a different conclusion.

American Express Co. v. Stuart.

Assumpsit. Appeal from the Circuit Court of Coles county; the Hon. J. W. CRAIG, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed June 20, 1907.

J. H. MARSHALL, for appellant.

A. J. FRYER and E. C. and JAMES W. CRAIG, JR., for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in *assumpsit* by appellant for the recovery from appellee of the sum of $192.75, being the proceeds of certain money orders sold by appellee while acting as agent for appellant. A trial by jury resulted in a verdict and judgment for the defendant, to reverse which, the plaintiff below prosecutes this appeal.

There is no controversy as to the material facts involved, which are substantially as follows: On July 4, 1905, and for several years prior thereto, appellee, a druggist, doing business in the city of Charleston, Illinois, had been acting as agent for appellant in the sale of express money orders issued by it. Under the terms of his appointment it was his duty to keep the proceeds of all money orders sold by him separate and distinct from any other money he might have. In his drug store which was located upon the public square, he kept an iron fire-proof safe, which set back of the prescription case, and was not visible from the front part of the store. In the safe was a wooden drawer in which he kept the funds belonging to the appellant, and in another drawer, made of tin with an iron door, but which could be slipped from its socket without difficulty, he kept his private funds. The latter was furnished with a lock to which appellee alone had a key. Upon the safe was a four-number combination lock, which, during business hours, was kept partially turned on, so that the door could be opened through the use of the last number of the combination only. In

some way, not known to appellee, his prescription clerk had learned said number, and was able to open the safe, and had done so on a number of occasions, at times when appellee was absent from the store, or the clerk supposed him to be absent. Appellee admitted that he knew that Myers had, to this extent, access to the contents of the safe, and it does not appear that he did anything to deprive him of the same. Early in the evening of July 4th, appellee left the drug store in charge of his prescription clerk. At that time the cash drawer, which was locked, contained the sum of $200, belonging to appellee, while the funds of appellant, amounting to $192.75, were, as usual, left in a wooden drawer having no lock. The lock of the safe was partially turned, as hereinabove described. The clerk left the store room at 9:45 and appellee returned thereto at 10:05 o'clock p. m. He found the front door of the store locked. The rear door which was secured by a wooden brace, had been tampered with from the outside in a manner calculated to give the impression that an entrance had been effected from the rear. The funds in the cash drawer were found to be intact, but appellant's money was missing, together with some $14 belonging to appellee which was kept in still another department of the safe. The clerk was the only person, other than appellee, who had a key to the store or knowledge of the number necessary to open the safe. On July 8th a warrant was issued for the arrest of the clerk, upon complaint by appellee charging him with having stolen the money in question.

Among the instructions given at the instance of appellee, was that numbered "three" in the abstract, which told the jury that if they believed, from a preponderance of the evidence that plaintiff's money was kept entirely separate and distinct from other funds in the hands of the defendant, and that he, in caring for it, exercised that degree of care and caution that the ordinarily careful and prudent man would have exercised under like circumstances and that the money

was stolen, "it would be their duty to find for the defendant."

The third refused instruction offered by appellant, in brief, told the jury that if they believed from the evidence that while the money of the plaintiff was in the possession of the defendant, the defendant permitted his clerk to have access to the same without his permission, and as a result of such access, the clerk stole the money, then the defendant should bear the loss.

It is urged by appellant that the prescription clerk was the sub-agent of appellee, appointed or employed without the authority, knowledge or consent of appellant, that appellee was, therefore, responsible for the acts of such sub-agent and that, if the theft of the money was committed by him, appellee is liable therefor. Such position is untenable. It does not appear from the evidence that the prescription clerk was authorized or employed by appellant either to sell or receive payment for the money orders, or to handle the proceeds of the same. He was as much a stranger to the transactions between appellant and appellee as though he had been employed elsewhere than at the drug store. While the fact that the alleged thief was employed by appellee in and about the store in the capacity of clerk, was proper to be considered by the jury in determining whether or not appellee had exercised the degree of care imposed upon him by law, it did not create the relation of sub-agency. Nor can it be said that appellee was liable as master for the acts of his servant, the clerk, as it is manifest that the wrongful appropriation of the money in question was not within the scope or line of his duties or employment.

The relation of appellant and appellee was merely that of principal and agent, and in caring for the property of appellant, his principal, appellee was only bound to exercise that degree of care and caution for its preservation and safety that an ordinarily careful

and prudent person would have exercised under like or similar circumstances. It follows that the trial court did not err in its rulings upon the foregoing instructions.

It is insisted by counsel for appellant that the conduct of the clerk in surreptitiously opening the safe without authority, was sufficient to arouse the serious suspicion in the mind of any ordinary man as to his honesty, and that this, and the further fact that appellee kept his own money in a locked drawer, while that of appellant was kept in one not so secure, so clearly show a lack of due care on the part of appellee as to warrant this court in disturbing the finding of the jury to the contrary.

There is much force in such contention, and while if sitting as jurors we might have reached a different conclusion than that of the jury as evidenced by its verdict, we are nevertheless unable to say that such opposite conclusion would be so clearly justified that all ordinarily prudent men would, after a careful and dispassionate consideration of the uncontroverted facts, arrive thereat without hesitation or dissent. The question as to due care was, therefore, one of fact for the determination of the jury. As has been said, the jury was properly instructed as to the law, and it does not clearly appear that it misconstrued the evidence or that it was actuated by passion or prejudice. It is well settled that in such state of the record courts of review are not at liberty to disturb a verdict unless the same is manifestly contrary to and unwarranted by the evidence.

We are not inclined to so hold in the present case and must accordingly affirm the judgment of the Circuit Court.

*Affirmed.*