**Pennsylvania, Company operating the Pittsburgh, Ft. Wayne & Chicago Railway, Defendant in Error, v. W. A. Fraser Company, Plaintiff in Error.**

## Gen. No. 17,760.

1. CARRIERS—*demurrage.* A demurrage regulation is for the prompt release of cars and is not intended to be so liberal as to defeat the end sought to be attained, but to stimulate the shipper to release cars and thus enable the carrier to serve all shippers.

2. CARRIERS—*relation between carriers and owner of shipment.* Where a person buys a car load of grain dust and after a lapse of time, knowing that demurrage charges were accumulating, authorizes the railroad company to dispose of it, the company becomes the agent of the owner and is bound to use only that degree of skill, care and diligence which the nature of the undertaking and the time, place and circumstances of the performance reasonably demand.

3. CARRIERS—*due diligence in selling shipment.* Where an owner of a car load of grain dust keeps the car out of service an unwarrantedly long time and, demurrage accumulating, authorizes the railroad company to sell it, if it appears that there were practically no purchasers nor any market for the dust at any time after the authorization because of adverse litigation as to the use of it, it cannot be contended that the company did not use due diligence.

4. CARRIERS—*private sale of shipment.* Where demurrage charges accumulate on a car load of grain dust and the owner authorizes the railroad company to sell it by an order not limited as to means, method or price, the company may dispose of the dust at a private sale, and a statute regarding the disposition of unclaimed property has no application.

5. CARRIERS—*recovery of demurrage charges.* Where the owner of a car load of grain dust who knows that demurrage charges

were accumulating upon the car, and at what rate, retains the car for an unreasonably long time and finally gives the railroad company a general order to sell the dust, which is sold at private sale but, owing to adverse litigation as to its use, brings but a small price, a demurrage charge of a dollar a day, excluding Sundays and holidays, for the days the car was held after "free time" had expired, less the amount of the sale, may be recovered.

Error to the Municipal Court of Chicago; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed December 17, 1912.

CHARLES A. BUTLER, for plaintiff in error.

LOESCH, SCOFIELD & LOESCH, for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Defendant in error, Pennsylvania Company, sued the plaintiff in error in the Municipal Court for demurrage for car service on a certain car containing grain dust, loaded on July 6, 1910, by the J. Rosenbaum Grain Company for the account of plaintiff in error at the East Side Station of the Pennsylvania Company. The suit was to recover charges on the car, accruing from July 11, 1910, to November 30, 1910, excluding Sundays and holidays, at $1 a day. The answers of the defendant to interrogatories filed by the plaintiff, defendant in error, showed that about July 9, 1910, plaintiff in error bought a carload of grain dust on car known as P. R. R. 76,840, and that there was a market therefor from July 6th to November 30th, plaintiff in error admitting in the answers that it had been in the grain business since the first of May, 1902, and was aware in July, 1910, and since then, that railroads in Chicago charged car service on cars held after "free time" had expired. The answers also admitted that on January 4, 1911, plaintiff in error received a wire from E. E. Wright, defendant in error's agent, and on January 6, 1911, received a wire from some person stating that this car could be held at the Penn-

sylvania Company's East Side Station no longer, and as the Pennsylvania Company could not sell the stuff, it would have to dump it, and asking defendant's authority therefor. It was also admitted on the trial that a letter dated August 23, 1910, from J. H. Knight, agent of the defendant in error, was received by the plaintiff in error, wherein it was stated that the defendant in error had been holding this car since July 9th, awaiting orders from plaintiff in error, and that there was at that time $36 demurrage against it, and asking for orders for its disposition.

No testimony was offered on the trial except on behalf of the defendant in error.

The court below, at the conclusion of the trial, entered a finding and judgment in favor of the defendant in error for $116.

The grounds urged by plaintiff in error for reversal of the judgment are, 1st, that the defendant in error did not use due diligence in disposing of the grain dust in question; 2nd, that defendant in error disposed of the car at a private sale without due notice to the plaintiff in error, and not at a public sale; and 3rd, that the court erred in finding the issues and entering judgment. Upon a consideration of the evidence, we are of the opinion that it shows plaintiff in error gave defendant in error no orders with reference to the car, although such orders were frequently and urgently solicited by the defendant in error. Plaintiff in error knew that demurrage charges were accumulating upon the car, and at what rate. Finally on November 30, 1910, the plaintiff in error gave to the defendant in error authority to dispose of the grain dust contained in the car. Defendant in error thereupon became the plaintiff in error's agent in disposing of the dust and was bound to use only that degree of skill, care and diligence which the nature of the undertaking and the time, place and circumstances of the performance reasonably demanded. Mechem on Agency, secs. 490, 494, 497 and 502; Bagley v. Findlay, 82 Ill. 524; American Exp. Co. v. Stuart, 134 Ill. App. 390. Defendant in

error did not hold itself out to plaintiff in error as an expert in selling grain dust, but acted practically under compulsion after plaintiff in error had kept its car out of service an unwarrantably long time. We think the evidence shows that after the defendant in error received authority from the plaintiff in error to dispose of the grain dust, it did everything in its power and disposed of it on the best possible terms. The evidence shows that there were practically no purchasers for such dust at any time after November 30, 1910, because of much adverse litigation on the use of it, and that there was practically no market for the grain dust after the defendant in error received authority to dispose of it.

We know of no legal reason why the defendant in error should not have disposed of the dust at a private sale as it did. The statute relied upon by the plaintiff in error, regarding the disposition of unclaimed property, has no application to this case. The authority given by the plaintiff in error to the defendant in error to dispose of the dust was not limited as to means, method or price.

The demurrage rate of $1 per day has been held to be a reasonable rate. The object to be secured by the demurrage regulation is the prompt release of cars. It is not intended that they shall be so liberal as to defeat the end sought to be attained, but to stimulate the shipper to release cars and thus enable the carrier to serve all shippers. Schumacher v. Chicago & N. W. R. Co., 207 Ill. 199; Cleveland, C. C. & St. L. R. Co. v. Propst Lumber Co., 114 Ill. App. 659; Chicago P. & St. L. R. Co. v. Dorsey Fuel Co., 112 Ill. App. 382.

Upon a consideration of the evidence in the case, we are of the opinion that the finding and judgment is sustained by the evidence, and the judgment is affirmed.

*Affirmed.*